## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CVR ENERGY, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:17-cv-1284 |
| AMERICAN ZURICH INSURANCE | § | |
| COMPANY, ZURICH AMERICAN | § | |
| INSURANCE COMPANY & AMERICAN | § | |
| GUARANTEE & LIABILITY INSURANCE | § | |
| COMPANY | § | |
| Defendants. | § | |

## COMPLAINT

For its Complaint against Defendants American Zurich Insurance Company, Zurich American Insurance Company, and American Guarantee & Liability Insurance Company (collectively, "Zurich" or "Defendants"), Plaintiff CVR Energy, Inc. ("CVR Energy" or "Plaintiff") states and avers as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1. Plaintiff CVR Energy is a Delaware corporation that maintains its principal place of business in Texas.

2. Defendant American Zurich Insurance Company ("American Zurich") is an Illinois corporation that maintains its principal place of business in Illinois.

3. Defendant Zurich American Insurance Company ("Zurich American") is an Illinois corporation that maintains its principal place of business in Illinois.

4. Defendant American Guarantee & Liability Insurance Company ("American Guarantee") is an Illinois corporation that maintains its principal place of business in Illinois.

5.      Defendants, American Zurich, Zurich American, and American Guarantee, are all within the Zurich Insurance Group, and are referred to collectively herein as "Zurich."

6.      Jurisdiction in this action is proper pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and Plaintiff and Defendants are citizens of different states.

7.      Venue in this action is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTS COMMON TO ALL COUNTS

### *The Insurance Policies*

8.      American Zurich issued a Worker's Compensation and Employers Liability Policy to Plaintiff, Policy #WC 9267659-01, effective July 1, 2012 to July 1, 2013 (the "WC/EL Policy"). The WC/EL Policy has a deductible of $500,000 per accident and a limit of $1 million per accident. The payment of the $500,000 deductible under the worker's compensation coverage part satisfies the deductible for the employer's liability coverage part, as well.

9.      Zurich American issued a Comprehensive General Liability Policy to Plaintiff, Policy # GLO 9567657, effective July 1, 2012 to July 1, 2013 (the "CGL Policy"). The CGL Policy has a self-insured retention ("SIR") of $1 million per incident and a limit of $1 million per occurrence.

10.      American Guarantee issued an Umbrella Policy to Plaintiff, Policy # UMB 9267786, effective July 1, 2012 to July 1, 2013 (the "Umbrella Policy"), which provides excess coverage over the CGL Policy and the employer's liability portion of the WC/EL Policy. The Umbrella Policy has a limit of $25 million.

### a. *Named Insureds Under the WC/EL Policy*

11.     CVR Energy, CVR Partners, LP ("CVR Partners"), CVR Refining, LP ("CVR Refining"), Wynnewood Refining Company, LLC ("Wynnewood"), and Wynnewood Energy Company, LLC ("Wynnewood Energy") are Named Insureds under the WC/EL Policy.

12.     CVR Energy acquired Gary-Williams Energy Company, LLC ("Gary-Williams") from GWEC Holding Company, Inc. effective December 15, 2011.  On June 1, 2012, the name Gary-Williams Energy Company, LLC was changed to Wynnewood Energy Company, LLC. Therefore, Gary-Williams and Wynnewood Energy refer to the same company.  Wynnewood Energy is listed as a Named Insured on the WC/EL Policy, as reflected above.

13.     CVR Energy, CVR Partners, CVR Refining, Wynnewood, Gary-Williams, and Wynnewood Energy are referred to herein collectively as the "CVR Entities."

### b. *Relevant Terms of the WC/EL Policy*

14.     Part A of Part Two of the WC/EL Policy states:

> This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.
>
> 1.     The bodily injury must arise out of and in the course of the injured employee's employment by you.
>
> 2.     The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.
>
> 3.     Bodily injury by accident must occur during the policy period.
>
> . . .

WC/EL Policy, Part Two (A), WC 00 00 00 B, p. 2/6.

15.     Part B of Part Two of the WC/EL Policy states:

> We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

3

The damages we will pay, where recovery is permitted by law, include damages:

1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. For care and loss of services; and

3. For consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

WC/EL Policy, Part Two (B), WC 00 00 00 B, p. 2/6.

16. The "Large Deductible Endorsement" of the WC/EL Policy states:

1. You agree to reimburse us for:
   a. Each Accident/each Claim, up to the deductible amount shown in the Schedule above, for the total of:
      (1) All benefits required of you by the Workers Compensation Law . . . ; plus
      (2) All sums you must pay as damages under Employers Liability Insurance . . .
2. All claims for benefits or damages because of bodily injury by the same or related diseases to any one person will be considered as one claim when determining how the deductible amounts apply."

WC/EL Policy, Large Deductible Endorsement, WC 99 06 07, p. 1/2.

### *The Accident and Subsequent Litigation*

17. On September 28, 2012, an accident occurred at Wynnewood's crude oil refinery in Wynnewood, Oklahoma. Two employees, Russell Mann and Billy Smith, were killed.

18. On September 30, 2013, Leanna Mann and Kari Smith, spouses of the deceased employees ("the Mann-Smith Plaintiffs"), filed suit against CVR Energy, CVR Partners, CVR

Refining, Gary-Williams, and Wynnewood in Fort Bend County, Texas.   The lawsuit is hereinafter referred to as the "Wynnewood Lawsuit."

19.     The Mann-Smith Plaintiffs alleged in the "Original Petition" that Russell Mann and Billy Smith were employed by CVR Energy, and by "CVR," which the Mann-Smith Plaintiffs defined to include CVR Energy, CVR Partners, and CVR Refining. The Mann-Smith Plaintiffs alleged Russell Mann and Billy Smith worked at CVR Refining, Inc. in Wynnewood, Oklahoma.

20.     On September 14, 2014, the Mann-Smith Plaintiffs filed a "Plaintiffs' First Amended Original Petition." The First Amended Petition contained the same allegations as the preceding petition with respect to the employers of Russell Mann and Billy Smith.

21.     On November 7, 2014, the Mann-Smith Plaintiffs filed a "Plaintiffs' Second Amended Original Petition." The Mann-Smith Plaintiffs alleged Russell Mann and Billy Smith were employed by Wynnewood, and that Wynnewood was owned and controlled by CVR. The Mann-Smith Plaintiffs made "veil-piercing" or "alter ego"-type allegations, described further below, with respect to CVR's relationship with its wholly-owned subsidiary, Wynnewood, and alleged CVR was liable for the torts of Wynnewood. In paragraph 39 of the Second Amended Petition, the Mann-Smith Plaintiffs alleged again that "Russell Mann and Billy Smith were employees of CVR."

22.     Under a cause of action for negligence, the Mann-Smith Plaintiffs specifically alleged:

> 33.     WRC is a wholly-owned subsidiary of CVR Refining LP, and ultimately, up the corporate chain, a wholly-owned subsidiary of CVR Energy, LLC.
>
> 34.     CVR Energy, Inc., CVR Partners, LP, and CVR Refining, LP ("CVR") collectively own/control WRC. CVR are parent

companies of WRC. The CVR companies are created as a vast web of corporate control and direction created for the sole purpose of maximizing profit, corporate greed and veiled attempts to protect themselves from their own negligence.

35.   CVR controls WRC in one or more of the following methods:

    a.    CVR owns all or most of WRC stock;

    b.    CVR and WRC have common directors and officers;

    c.    CVR provides financing to WRC;

    d.    CVR subscribes to all of WRC's stock;

    e.    WRC is undercapitalized without CVR;

    f.    CVR refers to WRC as its subsidiary, division or department;

    g.    WRC's officers or directors follow direction from CVR; and

    h.    the legal formalities for keeping these entities (CVR and WRC) separate and independent are observed.

CVR is the collective, dominant corporation over WRC, their wholly owned subsidiary and is therefore liable for the torts of its wholly-owned subsidiary.

23.   These veil-piercing allegations set forth in paragraphs 33-35 of the Second Amended Petition were the means by which the Mann-Smith Plaintiffs sought to impose liability on the CVR Entities. Under this theory of liability, if successfully established, the court would treat Wynnewood and the CVR Entities as the same, disregarding the "corporate fiction" of their separateness. The CVR Entities would therefore be held liable as the employer of Mann and Smith, regardless of which entity technically employed Russell Mann and Billy Smith. Moreover, the acts or omissions alleged in the Second Amended Petition to constitute negligence were alleged to be acts or omissions of Wynnewood, specifically:

    a.    Failed to install BMS onto the Wickes Boiler

    b.    Failed to install BMC onto all heating equipment of the Wynnewood Refinery, including the Wickes boiler.

    c.    Failed to adequately monitor the dangerous condition of the Wynnewood Refinery, including the Wickes boiler;

      d.       Failed to alleviate hazardous conditions that cause injury or death to workers; and

      e.       Failed to repair hazardous conditions causing injury or death to workers, including the Wickes boiler.

      f.       Failed to comply with OSHA directives/orders to install BMS systems on the Wickes boiler.

Second Amended Petition ¶ 36.

24.     On April 6, 2015, the Mann-Smith Plaintiffs filed "Plaintiffs' Third Amended Original Petition." The Mann-Smith Plaintiffs added GWEC Holding Company as a defendant. GWEC Holding Company is not affiliated with Plaintiff. This Third Amended Petition contained the same allegations as the preceding one with respect to the employment of Russell Mann and Billy Smith, the control of Wynnewood by CVR and the liability of CVR for Wynnewood's torts. Again, the Mann-Smith Plaintiffs alleged that "Russell Mann and Billy Smith were employees of CVR." Third Amended Petition ¶ 40.

25.     On May 29, 2015, the Mann-Smith Plaintiffs filed "Plaintiffs' First Supplemental Original Petition." This First Supplemental Petition contained the same allegations as the preceding two with respect to the employment of Russell Mann and Billy Smith, the control of Wynnewood by CVR and the liability of CVR for Wynnewood's torts. Again, the Mann-Smith Plaintiffs alleged that "Russell Mann and Billy Smith were employees of CVR." First Supplemental Petition § 39.

26.     On September 14, 2015, the Mann-Smith Plaintiffs filed "Plaintiffs' Fourth Amended Original Petition." The Fourth Amended Petition also named only three defendants: CVR Energy, CVR Refining and Gary-Williams. The Fourth Amended Petition did not describe Russell Mann and Billy Smith as employees of CVR, but instead, as with the previous three petitions, alleged Mann and Smith were employed by Wynnewood, that Wynnewood was owned

and controlled by CVR, and that CVR was liable for the torts of Wynnewood, its wholly owned subsidiary, based on alter ego or veil-piercing allegations.

27.    One day later, on September 15, 2015,  the Mann-Smith Plaintiffs amended their petition again, filing 'Plaintiff's Fifth Amended Original Petition." The Fifth Amended Petition, which is currently operative, does not describe Mann and Smith as employees of CVR, but contains the same allegations as the previous four petitions with respect to the employment of Mann and Smith by Wynnewood, the ownership and control of Wynnewood by CVR and CVR's alleged liability for the torts of Wynnewood based on an alter ego or veil piercing theory. Wynnewood is not listed as a defendant in the Fifth Amended Petition.

### *Zurich's Refusal to Defend All Defendants Under the WC/EL Policy*

28.    CVR Energy received a Reservation of Rights Letter dated February 7, 2014, from Elaynne B. Cothran at Zurich (the "Cothran Letter").  The Cothran Letter stated that CVR Energy is eligible for a defense in the Wynnewood Lawsuit under the WC/EL Policy.

29.    In the Cothran Letter, Zurich confirmed that CVR Energy "qualifies as an insured under the Employer's Liability portion of the Worker's Compensation policy, for the accident to Mann and Smith."

30.    CVR Energy also received a Reservation of Rights letter dated February 7, 2014 from David M. DeLuca at Zurich (the "DeLuca Reservation of Rights Letter"), acknowledging the lawsuit but concluding that the CGL policy excludes coverage for bodily injury to an employee of the insured arising out of and in the course of employment by the insured.  Zurich concluded that the Umbrella Policy was subject to the same restrictions on coverage as the underlying policy.

31.     As of March 13, 2014, Zurich ostensibly provided a defense under the CGL Policy to Wynnewood, CVR Partners, and CVR Refining. Zurich provided a defense for CVR Energy under the WC/EL Policy.

32.     By the time the Mann-Smith Plaintiffs initiated litigation in September 2013, CVR Energy had already satisfied the $500,000 deductible under the WC/EL Policy by reimbursing Zurich for worker's compensation benefits paid shortly after the incident on CVR Energy's behalf.

33.     Zurich nevertheless paid only half of the legal fees incurred for the defense of any CVR Entity in the Mann-Smith Litigation, withholding the remaining half on the grounds that it had to go towards payment of the $1,000,000 SIR under the CGL Policy. If Zurich treated all CVR Entities as falling under the WC/EL Policy, it would have had to pay all legal fees incurred for the defense of any CVR Entity.

34.     CVR Energy requested that Zurich provide coverage for all CVR Entities under the WC/EL Policy, under which CVR Energy was defended.

35.     On March 13, 2015, CVR Energy received a "draft" coverage letter from Zurich in response to CVR Energy's inquiry about coverage under the WC/EL Policy for the CVR Entities (the "March 13, 2015 Letter"). In the March 13, 2015 Letter, Zurich asserted that CVR Partners, CVR Refining, and Wynnewood did not qualify for coverage under the WC/EL Policy because they were not alleged to be the employer(s) of Mann or Smith.

36.     In the March 13, 2015 Letter, Zurich also erroneously claimed that CVR Refining was not a named defendant and, consequently, that coverage did not exist for it under the WC/EL Policy.  In fact, CVR Refining was listed in the caption as a defendant and described throughout the various iterations of the petition as a defendant.

9

37.     On April 10, 2015, CVR Energy's broker sent an email to Cothran that set forth various factual errors in Cothran's analysis of coverage in the March 13, 2015 Letter, including CVR Refining's status as a named defendant. This April 10, 2015 email also gave reasons why the WC/EL Policy covers any CVR Entity in the schedule, regardless of whether the entity is technically described as the employer in the petition. In particular, the WC/EL Policy obligates Zurich to provide coverage due to "bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer." WC/EL Policy, Part Two (B), WC 00 00 00 B, p. 2/6.  This provision of the WC/EL Policy provides coverage to all Named Insureds based on allegations of employment by any of them because the WC/EL Policy's reference to "you" and "your" encompasses all Named Insureds, each CVR Entity is a Named Insured, and there is no distinction between any of the CVR Entities or their status as employers within the WC/EL Policy.  The April 10, 2015 email attached the Third Amended Petition for Zurich's consideration.

38.     On May 6, 2015, Zurich advised the CVR Entities that it believed "all insured parties now are eligible for a defense under the EL policy," including CVR Partners, CVR Refining, and Wynnewood ("May 6 Letter").  An email from Cothran at Zurich to Gary Morrow at CVR Energy, attaching the May 6 Letter, stated that "[o]n a go forward basis, from the time we received the new pleading, we will pay all invoices off the two CVR EL files."

39.     In the May 6 Letter, Zurich noted that, in the Third Amended Petition, the Mann-Smith Plaintiffs alleged Russell Mann and Billy Smith were employees of Wynnewood and that CVR owns and controls Wynnewood and the Wynnewood Refinery. Zurich also noted the Mann-Smith Plaintiffs' veil-piercing allegations and claim that the CVR Entities were liable for the torts of CVR Energy's  wholly-owned subsidiary, Wynnewood.

40.     In the May 6 Letter, however, Zurich refused to provide coverage for Gary-Williams or GWEC Holding Company on the grounds that "neither were listed on the policy." This was in error because Gary-Williams' name changed to Wynnewood Energy on June 1, 2012, the name change was made effective prior to the inception of the WC/EL Policy, and Wynnewood Energy was listed as a Named Insured under the WC/EL Policy. CVR Energy's broker had clarified this name change to Zurich before the issuance of the May 6 letter, but Zurich nevertheless denied coverage.

41.     On May 11, 2015, CVR Energy asked Zurich to reimburse it for 100% of the defense costs incurred for the defense of the CVR Entities because the allegations that Zurich relied on to conclude coverage existed under the Third Amended Petition were present also in all previous iterations of the petition, back to the "Original Petition" filed September 30, 2013.

42.     The next day Zurich refused, responding only, "we are sorry but we disagree." On May 13, 2015, CVR Energy asked for reconsideration because Zurich had made no attempt to review the facts or basis for CVR Energy's position that all the CVR Entities were covered under the WC/EL Policy from the inception of the Mann-Smith Litigation. The next day Zurich responded, stating only, "I believe that we addressed this issue in our last letter.  Here is a copy for you."

### *Zurich's Refusal to Pay Defense Invoices After Assuming the Defense Under the WC/EL Policy*

43.     On or about June 15, 2015, CVR Energy submitted to Zurich the outside counsel bills it had incurred in defending all the CVR Entities in connection with the Mann-Smith Litigation. This submission included invoices for fees incurred both before and after the filing of the Third Amended Petition on April 6, 2015.

44.     On or about July 24, 2015, CVR Energy again submitted to Zurich legal bills on the Mann-Smith Litigation, including additional invoices from May and June, 2015.  CVR Energy noted in an email attaching the legal bills that Zurich also had not reimbursed for the invoices submitted on June 15, 2015.

45.     Elaynne Cothran at Zurich responded the same day, stating that Zurich in the past "had trouble with accounting getting the bills paid because they do not go through the online bill review system," that Zurich had paid half of what was owed from file 2720081110, but that reimbursement for the remaining amounts owed by Zurich, for file 2720081111, was "stalled" and that she "reminded them again to pay and send." Neither the WC/EL nor the CGL Policy condition Zurich's payment obligation on electronic submission of bills.

46.     Zurich reimbursed for only half of the amount reflected in the June 15, 2015 invoice submission, despite Zurich's acknowledgement of an obligation to pay for the defense of all CVR Entities under the WC/EL Policy.

47.     On August 26, 2015, CVR Energy again contacted Zurich about its failure to pay the outstanding legal fees. CVR Energy pointed out that Zurich had not yet reimbursed for the July 24, 2015 submission of legal bills. CVR Energy also submitted additional legal bills for fees in June, 2015.

48.     Zurich never reimbursed CVR Energy for any of the amounts reflected in the July 24, 2015 submission of legal bills, despite Zurich's acknowledgement of an obligation to pay for the defense of all CVR Entities under the WC/EL Policy.

49.     In October 2015, Zurich did, however, make full payment of the June legal fees submitted on August 26, 2015. These are the only legal invoices Zurich ever paid in full.

50.     On or about September 30, 2015, Zurich notified CVR Energy by email that Zurich would no longer provide a defense to any CVR Entities under the WC/EL Policy, but rather would defend only under the CGL Policy. Zurich asserted it was not obligated to pay under the WC/EL Policy because the Fifth Amended Petition, filed September 15, 2015, did not list Wynnewood as a defendant and did not allege employment of Mann or Smith by CVR Energy.

51.     Zurich took the position that CVR Energy was obligated to pay the entire $1 million SIR under the CGL policy, without any credit for the $500,000 deductible CVR Energy had already paid  under the WC/EL Policy. Zurich therefore claimed it was not obligated to provide coverage until CVR Energy paid another $1,000,000 towards the defense, even though CVR had already satisfied the $500,000 deductible under the WC/EL Policy.

52.     The CGL Policy, however, allows CVR Energy to satisfy the SIR from deductible payments made by CVR Energy under other policies with Zurich. CGL Policy, "Self Insured Retention Endorsement."

53.     On or about October 1, 2015, CVR Energy submitted to Zurich invoices for July and August legal fees. Zurich never reimbursed CVR Energy for any of the amounts reflected in this October 1, 2015 submission, even though, when these legal fees were incurred, Zurich was acknowledging an obligation to pay for the defense of all CVR Entities under the WC/EL Policy.

54.     On or about November 30, 2015, CVR Energy submitted to Zurich invoices for September and October legal fees. Zurich never reimbursed CVR Energy for any of the amounts reflected in this November 30, 2015 submission, even though, when the September legal fees were incurred, Zurich was acknowledging an obligation to pay for the defense of all CVR Entities under the WC/EL Policy.

55.     CVR Energy continues to incur legal fees in defending the CVR Entities in the Mann-Smith Litigation.

56.     CVR Energy has communicated with Zurich about the outstanding legal fees, but Zurich has never reimbursed CVR Energy for all the defense costs incurred in the Mann-Smith Litigation. Zurich paid only half of the invoices submitted on or before June 15, 2015, and has paid none of the invoices submitted thereafter, with the exception of the June invoices submitted to Zurich on or about August 26, 2015.

57.     On February 23, 2016, Zurich sent CVR Energy a reservation of rights letter, stating that Zurich would not provide coverage under the WC/EL Policy and that Zurich was reserving its right to deny coverage under the CGL Policy.

58.     By letter dated August 12, 2016, CVR Energy, through its counsel, made a written demand on Zurich for coverage for the CVR Entities under the WC/EL Policy, and for payment of all outstanding defense costs in full.

59.     The August 12, 2016 written demand from CVR Energy explained that, because the Mann-Smith Plaintiffs' claims against the CVR Entities are solely predicated on an alter ego or veil piercing theory, and the operative Fifth Amended Petition is utterly devoid of allegations that the CVR Entities should be liable for any reason other than as the alter ego of Wynnewood that employed Mann and Smith, Zurich must treat each of the CVR Entities as the employer under the EL coverage part of the WC/EL Policy.

60.     Zurich ignored and did not respond to CVR Energy's August 12, 2016 written demand.

*Zurich's Improper Assertion of Worker's Compensation Liens Against Co-Insureds*

61.    On or about September 11, 2015, Zurich filed an "Original Petition in Intervention" in the Mann-Smith Litigation (hereinafter "Intervention Petition"). This Intervention Petition was filed while the First Supplemental Petition was in effect, which alleged that "Russell Mann and Billy Smith were employees of CVR." First Supplemental Petition § 39.

62.    In the Intervention Petition, Zurich acknowledged that it issued a worker's compensation policy to CVR Energy, Inc. and that it paid indemnity and medical benefits to the Mann-Smith Plaintiffs pursuant to that policy and worker's compensation laws. Intervention Petition ¶ 13.

63.    In the Intervention Petition, Zurich alleged that the decedents' injuries were "caused by the negligence and fault of Defendants CVR Energy, Inc., CVR Partners, LP, CVR Refining, LP, Gary-Williams Company, LLC and GWEC Holding Company . . . ." Intervention Petition ¶ 12. Zurich asserted that it was "subrogated to the rights of Plaintiffs against Defendants CVR Energy, Inc., CVR Partners, LP, CVR Refining, LP, Gary-Williams Energy Company, LLC and GWEC Holding Company" to the extent of the benefits paid under the Policy, and sought "to intervene in [the Mann-Smith] action to assert its subrogation right, under Texas and/or Oklahoma law, to recover from Defendants the benefits it has paid to and/or on behalf of Plaintiffs." Intervention Petition ¶¶ 16, 19.

64.    Zurich claimed a statutory right to recover on its lien and entitlement to "first moneys out of a third party liability recovery," referencing the Texas Supreme Court ruling in *Ledbetter v. Texas Mutual*. Intervention Petition ¶ 19. Zurich did not disclose to its insureds that the Texas statute purportedly granting this right of recovery applies only to claims against third parties, and does not grant Zurich any right of recovery against the employer(s). When Zurich

filed the Intervention Petition, the operative petition (First Supplemental Petition) expressly alleged "Russell Mann and Billy Smith were employees of CVR." First Supplemental Petition § 39. In addition, the Mann-Smith Plaintiffs seek to impose liability on the CVR Entities through a veil-piercing or alter-ego theory, under which the CVR Entities would be held liable as the employer of Mann and Smith. Zurich therefore had no statutory right to assert worker's compensation liens as against the CVR Entities but nevertheless did so.

65.    Further, having paid these benefits under the WC/EL Policy on behalf of the CVR Entities, Zurich had no right to assert any worker's compensation liens/subrogation claims against those same CVR Entities, the named insureds and co-insureds under the WC/EL Policy, to recover for the benefits paid. Zurich's assertion of the worker's compensation liens/subrogation claims violates the "anti-subrogation rule."

66.    Zurich has refused to waive this improperly asserted lien on any judgment the Mann-Smith Plaintiffs might recover against the CVR Entities, which in turn hinders the CVR Entities' efforts at settlement with the Mann-Smith Plaintiffs.

## COUNT I:  BREACH OF CONTRACT

67.    CVR Energy hereby incorporates paragraphs 1 through 63 above as though fully set out herein.

68.    The WC/EL Policy obligates Zurich to defend all the CVR Entities named as defendants at any time in the Mann-Smith Litigation, including CVR Energy, CVR Partners, CVR Refining, Gary-Williams and Wynnewood.

69.    Zurich's duty to defend the CVR Entities arose upon the filing of Plaintiff's Original Petition on or about September 30, 2013.

70.   The CVR Entities have provided Zurich with all information, assistance and cooperation under the terms of the WC/EL Policy, and otherwise have satisfied all conditions to coverage under the WC/EL Policy.

71.   Zurich has breached its duty to defend the CVR Entities under the WC/EL Policy. Zurich has breached its obligations in the following, non-exhaustive means:

(a)   By refusing to reimburse the CVR Entities for 100% of costs incurred in defending the Mann-Smith Litigation, from the filing of the Original Petition on September 30, 2013 through the present.

(b)   By refusing to defend all the CVR Entities in the Mann-Smith Litigation under the WC/EL Policy from September 30, 2013 to May 6, 2015.

(c)   By refusing to defend CVR Energy, CVR Refining and Gary-Williams/Wynnewood Energy, under the WC/EL Policy from September 30, 2015 to the present.

72.   Zurich's breaches of the WC/EL Policy are improper, unjustifiable and in bad faith.

73.    As a direct and proximate cause of Zurich's contractual breaches, CVR Energy has been forced to incur defense costs in excess of $800,000, which amounts Zurich was liable for under the WC/EL Policy.

74.   As a direct and proximate result of Zurich's contractual breaches, CVR Energy has sustained, and Zurich is liable for, damages in excess of $800,000, and CVR's damages continue to increase every day. Under Zurich's erroneous interpretation of the deductible and SIR provisions of the WC/EL and CGL Policies, respectively, CVR Energy will suffer at least $1,000,000 in damages if the Mann-Smith Litigation is not resolved, assuming Zurich provides coverage for the CVR Entities after CVR Energy pays another $1,000,000 in defense bills.

75.   Pursuant to Texas Civil Practice and Remedies Code § 38.001, CVR Energy is entitled to costs and legal fees necessarily incurred in bringing this action.

17

WHEREFORE, CVR Energy respectfully requests that the Court,

(a)     award CVR Energy damages for all direct and consequential losses sustained as a consequence of Zurich's failure to honor the terms of the WC/EL Policy, in an amount to be proven at trial;

(b)     award CVR Energy pre-judgment and post-judgment interest at the highest rates permitted by law;

(c)     award CVR Energy its costs and attorneys' fees in bringing this action; and

(d)     grant such other relief as is just and equitable.

## COUNT II:  VIOLATION OF PROMPT PAYMENT ACT

76.     CVR Energy hereby incorporates paragraphs 1 through 72 above as though fully set out herein.

77.     The WC/EL Policy obligates Zurich to defend all the CVR Entities named as defendants at any time in the Mann-Smith Litigation, including CVR Energy, CVR Partners, CVR Refining, Gary-Williams and Wynnewood.

78.     On May 11, 2015, CVR Energy requested reimbursement by Zurich for 100% of the defense costs incurred for the defense of any CVR Entity on the Mann-Smith Litigation from the filing of the Wynnewood Lawsuit on September 30, 2013, through that date and going forward. Zurich never reimbursed CVR Energy for these defense costs.

79.     On or about June 15, 2015, July 24, 2015, August 26, 2015, October 1, 2015, and November 30, 2015, CVR Energy made claim for legal costs incurred in defending the CVR Entities in the Mann-Smith Litigation from March 2015 through October 2015. Zurich paid only half of the amounts owed for invoices submitted before and on June 15, 2015. Zurich has never made any payment to CVR Energy for the defense costs reflected on the invoices submitted on July 24, October 1, and November 30, though these defense costs were incurred during periods

18

in which Zurich conceded liability to pay for the defense of all CVR Entities under the WC/EL Policy.

80.     Zurich did not pay for all defense costs incurred by CVR Energy within the time frames set forth in the Texas Prompt Payment Act, Texas Insurance Code §§ 542.057 and 542.058.

81.     Zurich's delay in paying the CVR Entities' defense expenses in the Mann-Smith Litigation violates Texas Insurance Code §§ 542.057 and 542.058.

82.     As a direct and proximate result of Zurich's violation of the Prompt Payment Act, CVR Energy has sustained, and Zurich is liable for, damages in excess of $800,000, with damages continuing to increase every day.

83.     Pursuant to Texas Insurance Code § 542.060, CVR Energy is entitled to prejudgment interest at a rate of eighteen percent per year and costs and legal fees necessarily incurred in bringing this action.

WHEREFORE, CVR Energy respectfully requests that the Court,

(a)     find that Zurich has violated the Prompt Payment Act, Texas Insurance Code §§ 542.057 and 542.058;

(b)     award CVR Energy damages for all direct and consequential losses sustained as a consequence of Zurich's violations of the Prompt Payment Act, in an amount to be proven at trial;

(c)     award CVR Energy pre-judgment interest at a rate of eighteen percent per year, and post-judgment interest, as to all insurance proceeds due but wrongfully withheld by Zurich;

(d)     award CVR Energy its costs and attorneys' fees in bringing this action; and

(e)     grant such other relief as is just and equitable.

## COUNT III: VIOLATIONS OF TEXAS INSURANCE CODE CHAPTER 541

84.     CVR Energy hereby incorporates paragraphs 1 through 80 above as though fully set out herein.

85.     Zurich has knowingly engaged in the following unfair methods of competition and/or deceptive acts or practices in violation of Texas Insurance Code §§ 541.060(a) and 541.061:

(1)     In its communications with CVR Energy, Zurich knowingly misrepresented to CVR Energy material facts or policy provisions relating to coverage at issue; failed to state material facts to make other statements not misleading; made statements that would mislead a reasonable, prudent person to a false conclusion of a material fact; and made material misrepresentations of law, all in violation of § 541.060(a)(1) and § 541.061(1)-(4), including but not limited to:

(i)     by failing to acknowledge CVR Refining as a named defendant;

(ii)    by refusing to recognize the name change from Gary-Williams to Wynnewood Energy effective June 1, 2012, prior to the inception of the WC/EL Policy, even after CVR Energy's broker corrected Zurich on this point;

(iii)   by refusing to acknowledge coverage under the WC/EL Policy for all CVR Entities, even while they were all described as Mann's and Smith's "employer" under the various iterations of the petitions;

(iv)    by improperly asserting worker's compensation liens/subrogation claims against the CVR Entities, its own insureds under the WC/EL Policy and the CGL Policy, even while these CVR Entities were described as Mann's

20

and Smith's "employer" under the various iterations of the petitions, and Zurich was acknowledging a coverage obligation for all of these CVR Entities under the WC/EL Policy, all in violation of the anti-subrogation rule; and

(v)    by asserting that the CGL Policy's SIR is not exhausted by CVR Energy's payment of the deductible under the WC/EL Policy, a position contrary to the terms of the CGL Policy.

(2)    Zurich did not attempt in good faith to effect a prompt, fair and equitable settlement of CVR Energy's claim even though Zurich's liability was reasonably clear, in violation of § 541.060(a)(2), including, but not limited to:

(i)    by refusing to recognize coverage for all CVR Entities named as defendants in the Mann-Smith Litigation under the WC/EL Policy between September 30, 2013 and May 6, 2015, and again after September 30, 2015;

(ii)    by refusing to pay all defense costs incurred by all CVR Entities even during the May 6, 2015 to September 30, 2015 period in which Zurich conceded liability under the WC/EL Policy for all CVR Entities;

(iii)    by improperly asserting worker's compensation liens/subrogation claims against the CVR Entities, its own insureds under the WC/EL Policy, even while these CVR Entities were described as Mann's and Smith's "employer" under the various iterations of the petitions, and Zurich was acknowledging a coverage obligation for all of these CVR Entities under the WC/EL Policy, all in violation of the anti-subrogation rule;

21

(iv)    by refusing to provide any waiver of its alleged worker's compensation liens/subrogation claims against the CVR Entities to facilitate settlement discussions with the Mann-Smith Plaintiffs; and

(v)    by refusing to credit CVR Energy's payment of the WC/EL deductible towards the CGL Policy's SIR as required by the CGL Policy (even assuming Zurich's duty to defend and indemnify arose under the CGL Policy rather than the WC/EL Policy)

(3)    Zurich failed to promptly provide CVR Energy a reasonable explanation of the basis in the WC/EL Policy, in relation to the facts and applicable law, for Zurich's denial of benefits under the WC/EL Policy, in violation of § 541.060(a)(3), including but not limited to:

(i)    in Zurich's May 12 and May 14, 2015 responses to CVR Energy's requests that Zurich reimburse for 100% of the defense costs incurred for the defense of the CVR Entities;

(ii)    by Zurich's failure to provide a reasonable explanation for the denial of coverage for all entities under the WC/EL Policy; and

(iii)    by Zurich's failure to respond to CVR Energy's August 12, 2016 demand for coverage for the CVR Entities under the WC/EL Policy and for payment of all outstanding defense costs in full.

(4)    Zurich failed to acknowledge with reasonable promptness pertinent communications relating to a claim arising under Zurich's WC/EL Policy, including the August 12, 2016 letter from CVR Energy's counsel demanding reimbursement of all outstanding defense expenses and a defense under the

22

WC/EL Policy for all CVR Entities, which Zurich has never responded to, and which constitutes an unfair claims settlement practice in violation of § 542.003(b)(2); and

(5)     Zurich compelled CVR Energy to institute this suit to recover the amounts due under the WC/EL Policy, which constitutes an unfair claims settlement practice in violation of § 542.003(b)(5).

86.     As a direct and proximate result of Zurich's violations of Insurance Code §§ 541.060 and 541.061, CVR Energy has sustained, and Zurich is liable for, damages in excess of $800,000, which continue to increase every day. Zurich's statutory violations also caused CVR Energy injuries unrelated to and independent from the loss of benefits under the WC/EL Policy.

87.     Pursuant to Texas Insurance Code § 541.152, CVR Energy is entitled to treble damages and costs and legal fees necessarily incurred in bringing this action.

WHEREFORE, CVR Energy respectfully requests that the Court,

(a)     find that Zurich has violated Texas Insurance Code §§ 541.060 and 541.061;

(b)     award CVR Energy damages for all direct and consequential losses sustained as a consequence of Zurich's violations of §§ 541.060 and 541.061, in an amount to be proven at trial;

(c)     award CVR Energy treble damages under Insurance Code § 541.152(b);

(d)     award CVR Energy pre-judgment and post-judgment interest at the highest rates allowed by law;

(e)     award CVR Energy its costs and attorneys' fees in bringing this action; and

(f)     grant such other relief as is just and equitable.

## COUNT IV: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

88.     CVR Energy hereby incorporates paragraphs 1 through 84 above as though fully set out herein.

89.     There was no reasonable basis for Zurich to deny or delay payment of defense costs incurred by the CVR Entities before September 30, 2015. Zurich knew or should have known that the CVR Entities' claim was covered under the WC/EL Policy. Zurich's rationale for conceding liability for defense costs for all the CVR Entities under the WC/EL Policy in May, 2015 also existed from the date of the filing of the Original Petition on or about September 30, 2013.

90.     In failing to make full payment to CVR Energy for all defense costs incurred prior to September 30, 2015, Zurich acted in bad faith and breached its duty of good faith and fair dealing owed to its insureds. Zurich denied or delayed payment of policy proceeds after Zurich's liability became reasonably clear.

91.     There was also no reasonable basis for Zurich to shift payment of CVR Energy's defense costs from the WC/EL Policy to the CGL Policy on September 30, 2015. Zurich intentionally did so to try to compel CVR Energy to pay another $1,000,000 towards the defense beyond the $500,000 deductible already paid under the WC/EL Policy, and thereby further delay payment of policy proceeds owed by Zurich.

92.     In failing to defend the CVR Entities under the WC/EL Policy, Zurich acted in bad faith and breached its duty of good faith and fair dealing owed to its insureds.

93.     Zurich separately breached its duty of good faith and fair dealing by asserting improper worker's compensation liens/subrogation claims against the CVR Entities in violation of the anti-subrogation rule, and then refusing to provide any waiver of these asserted

liens/subrogation claims against the CVR Entities to facilitate settlement with the Mann-Smith Plaintiffs.

94.     Zurich's conduct was intentional, malicious, fraudulent, or grossly negligent.

95.     As a direct and proximate result of Zurich's bad faith and breach of the duty of good faith and fair dealing, CVR Energy has sustained, and Zurich is liable for, damages in excess of $800,000, which continue to increase every day. Zurich's breaches of the duty of good faith and fair dealing also caused CVR Energy injuries unrelated to and independent from the loss of benefits under the WC/EL Policy.

WHEREFORE, CVR Energy respectfully requests that the Court,

(a)     find that Zurich has violated its duty of good faith and fair dealing to its insureds;

(b)     award CVR Energy damages for all direct and consequential losses sustained as a consequence of Zurich's violation of its duty of good faith and fair dealing, in an amount to be proven at trial;

(c)     award CVR Energy punitive damages for Zurich's intentional, malicious, fraudulent or grossly negligent conduct;

(d)     award CVR Energy pre-judgment and post-judgment interest at the highest rates allowed by law;

(e)     award CVR Energy its costs and attorneys' fees in bringing this action; and

(f)     grant such other relief as is just and equitable.

## COUNT V: DECLARATORY JUDGMENT

96.     CVR Energy hereby incorporates paragraphs 1 through 92 above as though fully set out herein.

97.     Zurich is obligated to defend and indemnify all named defendants in the Mann-Smith Litigation under the WC/EL Policy.

98.     There is an actual and justiciable controversy between the parties concerning whether the WC/EL Policy affords coverage to the named defendants in the Mann-Smith Litigation.

99.     The Court should declare that Zurich is obligated to defend and indemnify all CVR Entities named as defendants at any point during the Mann-Smith Litigation, so that Zurich will be required to adjust and reimburse CVR Energy's losses as required by the WC/EL Policy and provide the benefits for which CVR Energy bargained and paid.

100.    In the alternative, even if the Court found that Zurich was obligated to defend and indemnify the CVR Entities under the CGL Policy, the Court should declare that Zurich is obligated to credit the $500,000 deductible paid under the WC/EL Policy towards the satisfaction of the $1 million SIR under the CGL Policy.

WHEREFORE, pursuant to 28 U.S.C. § 2201, CVR Energy respectfully requests that the Court:

(a)     declare that Zurich is obligated to defend all defendants named in the Mann-Smith Litigation under the WC/EL Policy or, in the alternative, if the Court finds defense and indemnity coverage is required under the CGL Policy, then declare that Zurich is obligated to credit the $500,000 deductible paid under the WC/EL Policy towards the satisfaction of the $1 million SIR under the CGL Policy;

(b)     award CVR Energy pre-judgment and post-judgment interest at the highest rates allowed by law;

(c)     award CVR Energy its costs and attorneys' fees in bringing this action;

(d)     award CVR Energy damages to compensate it for all losses sustained as a consequence of Zurich's failure to honor the terms of its WC/EL Policy; and

(e)     grant such other relief as is just and equitable.

26

**<u>Jury Demand</u>**

CVR Energy demands a trial by jury of all issues triable of right by a jury.

**<u>PRAYER</u>**

Plaintiff, CVR Energy, Inc., prays that defendants, American Zurich Insurance Company, Zurich American Insurance Company, and American Guarantee & Liability Insurance Company, be summoned to appear, and that upon trial plaintiffs have judgment against defendant for all damages requested in this complaint and for all other relief to which plaintiff may be entitled.

Respectfully submitted,

MEYER ORLANDO LLC

/s/ *Kristi L. Hamilton*
Kristi L. Hamilton – Attorney in Charge
Texas Bar No. 00787118
Fed. ID. No. 17598
13201 Northwest Freeway, Suite 119
Houston, Texas 77040
Telephone (713) 460-9800
Facsimile (713) 460-9801
khamilton@meyerorlando.com
**ATTORNEYS FOR PLAINTIFF**

OF COUNSEL:

STINSON LEONARD STREET
Scott C. Hecht, KS # 16492
Christina D. Arnone, KS #24522
1201 Walnut, Suite 2900
Kansas City, Missouri  64105
(816) 691-3190 Telephone
(816) 691-3495 Facsimile

27