United States District Court
Southern District of Texas
**ENTERED**
February 12, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CVR ENERGY, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 4:17-CV-01284 |
| AMERICAN ZURICH INSURANCE | § | |
| COMPANY, et al. | § | |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Dismiss. ECF No. 7. This case involves an insurance coverage dispute between Plaintiff CVR Energy, Inc. ("Plaintiff" or "CVR Energy"), on the one hand, and its insurers, American Zurich Insurance Company ("AZIC"), Zurich American Insurance Company ("ZAIC"), and American Guarantee & Liability Insurance Company ("AGLIC") (collectively "Defendants"), on the other hand. Each Defendant issued an insurance policy in effect for the relevant period to CVR Energy and other named insureds. ECF No. 7 at 10.[1]

This dispute arises from Defendants' refusal to provide Plaintiff and several of its related entities with a defense in a wrongful death case currently pending against them in Texas state court ("the Wynnewood Lawsuit"). ECF No. 1 at 4-5. Plaintiff alleges that it and several of its

---

[1] The insurance policies are as follows:

    (1) AZIC issued a Worker's Compensation and Employers Liability Policy to Plaintiff ("the WC/EL Policy");

    (2) ZAIC issued a Commercial General Liability Policy to Plaintiff ("the CGL Policy"); and

    (3) AGLIC issued an Umbrella Policy to Plaintiff ("the Umbrella Policy").

*Id.* at 2.

related entities were named as defendants in the Wynnewood Lawsuit and all of them are insureds under the WC/EL policy. Plaintiff claims that each of the Defendants had a duty to defend them throughout that litigation under the WC/EL policy. *Id.* at 26. Defendants dispute that each of them had a contractual duty to defend each of the entities named as defendants throughout the underlying litigation. Instead, they concede that AZIC had a duty to defend some, but not all, of the named defendants for certain parts of the Wynnewood Litigation under the WC/EL policy. ECF No. 7 at 8.[2] Defendants further admit that ZAIC had a duty to defend others under the CGL policy.[3] *Id.* at 24. In their motion, Defendants assert that Plaintiff's complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(6) and 12(c). *Id.*[4]

The Court has carefully reviewed the record, the parties' arguments, and the applicable law. The Court concludes that Defendants' motions should be granted in part and denied in part.

## I.    BACKGROUND

Russell Mann and Billy Smith were killed as a result of an exploding steam boiler at an Oklahoma refinery on September 28, 2012, according to the allegations in the underlying lawsuit. *Id.* at 8. On September 30, 2012, Leann Mann and Kari Smith, the spouses of the deceased men ("the Mann-Smith Plaintiffs"), filed suit in Texas state court against CVR Energy

---

[2] Defendants admit the following with respect to the WC/EL Policy: (1) under the Original Petition and First Amended Petition, AZIC owed a defense to CVR Energy and CVR Partners, but not CVR Refining, Gary-Williams, or Wynnewood; (2) under the Second Amended Petition, AZIC owed a defense to CVR Energy, CVR Partners, and Wynnewood, but not to Gary-Williams or CVR Refining; (3) under the Third Amended Petition, AZIC owed a defense to CVR Energy, CVR Partners, and Wynnewood, but not to Gary-Williams, CVR Refining, or GWEC; and (4) under the Fourth and Fifth Amended Petitions, AZIC did not owe a defense to any of the entities. *Id.* at 23-24.

[3] Defendants admit the following with respect to the CGL Policy: (1) under the Original Petition and First Amended Petition, ZAIC owed a defense to Gary-Williams and Wynnewood; (2) under the Second and Third Amended Petitions and First Supplemental Petition, ZAIC owed a defense to Gary-Williams; and (3) under the Fourth and Fifth Amended Petitions, ZAIC owed a defense to CVR Energy, CVR Refining, and Gary-Williams. *Id.* at 24.

[4] A Rule 12(c) motion for judgment on the pleadings is subject to the same standard as a motion under Rule 12(b)(6). *See Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017). However, a Rule 12(c) motion is filed *after* the pleadings have closed, whereas a Rule 12(b)(6) motion is filed *before* the responsive pleading is filed. Because the pleadings have not closed, the Court considers Defendants motion under Rule 12(b)(6) only.

and four related entities, allegedly under the common ownership and control of Plaintiff. The other named defendants are CVR Partners, CVR Refining, Gary-Williams Energy Company, LLC ("Gary-Williams"), and Wynnewood Refining Company, LLC ("Wynnewood") (collectively with Plaintiff referred to as the "Wynnewood defendants"). *Id*. at 8-10. Over the course of the litigation, the Mann-Smith Plaintiffs amended their petition six times, changing their allegations as to which of these entities were the decedents' employer, as well as their theories of recovery. These allegations are determinative of Defendants' liability in this case.

In their Original Petition, the Mann-Smith Plaintiffs alleged that CVR Energy and "CVR" (defined as CVR Energy, CVR Partners, and CVR Refining) employed their spouses. They further alleged that their spouses had worked at CVR Refining. They do not allege that Gary-Williams or Wynnewood were the decedents' employers in this petition. *Id*. at 5.

On February 7, 2014, Zurich sent Plaintiff a Reservation of Rights letter confirming that CVR Energy was eligible for a defense under the WC/EL Policy as an insured, but not under the CGL Policy or the Umbrella Policy because those policies excluded coverage for bodily injury to an employee in the course of employment by the insured. *Id*. at 8.

On September 14, 2014, the Mann-Smith Plaintiffs filed their First Amended Petition. It contained the same allegations as the Original Petitions concerning Mann and Smith's employment. *Id*. at 5.

On November 7, 2014, the Mann-Smith Plaintiffs filed their Second Amended Petition, now alleging that Wynnewood employed Mann and Smith. They also alleged that Mann and Smith were CVR's (defined as CVR Energy, CVR Partners, and CVR Refining) employees. *Id*. The Mann-Smith Plaintiffs further alleged that Wynnewood was a "wholly-owned subsidiary of CVR Refining LP, and ultimately, up the corporate chain, a wholly-owned subsidiary of CVR

3

Energy, LLC." *Id*. They allege that CVR "collectively own[ed]/control[led]" Wynnewood. *Id*. They further allege that the "CVR companies" had been "created as a vast web of corporate control and direction created for the sole purpose of maximizing profit, corporate greed and veiled attempts to protect themselves from their own negligence." *Id*. at 6. Through these "veil-piercing allegations," Plaintiff explains, the Mann-Smith Plaintiffs sought to impose liability on the CVR Entities, "disregarding the 'corporate fiction' of the[] separateness between Wynnewood and each of the CVR Entities." *Id*. The "CVR Entities," therefore, would be held liable as Mann and Smith's employer, "regardless of which entity technically employed" them. *Id.*

On April 6, 2015, the Mann-Smith Plaintiffs filed their Third Amended Petition, containing the same allegations as the Second Amended Petition concerning Mann and Smith's employment, CVR's control of Wynnewood, and CVR's liability for Wynnewood's torts. Plaintiffs added GWEC Holding Company ("GWEC") as a defendant. *Id*. at 7.

On May 29, 2015, the Mann-Smith Plaintiffs filed their First Supplemental Petition. Plaintiffs repeated the same allegations as the Third Amended Petition concerning Mann and Smith's employment, CVR's control of Wynnewood, and CVR's liability for Wynnewood's torts. *Id*.

On September 14, 2015, the Mann-Smith Plaintiffs filed their Fourth Amended Petition, naming only CVR Energy, CVR Refining, and Gary-Williams as defendants, dropping CVR Partners and Wynnewood from the lawsuit. *Id*. at 7. Unlike the preceding petitions, it did not allege Mann and Smith were CVR's (defined as CVR Energy, CVR Partners, and CVR Refining) employees. Rather, Plaintiffs alleged that Wynnewood employed them, and made the same allegations as the preceding petitions concerning CVR's control of Wynnewood and

4

CVR's liability for Wynnewood's torts. *Id*. at 7-8.

On September 15, 2015, the Mann-Smith Plaintiffs filed their Fifth Amended Petition, again naming only CVR Energy, CVR Refining, and Gary-Williams as defendants. The Fifth Amended Petition contains the same allegations as the Fourth Amended Petition concerning Wynnewood's employment of Mann and Smith, CVR's control of Wynnewood, and CVR's liability for Wynnewood's torts. *Id*. at 8.

## II.  LEGAL STANDARD FOR RULE 12(b)(6) MOTIONS

The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Culliver v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must include more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted).

The court must decide whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but is not required to assume the truth of legal conclusions. *Id*. at 678. "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Intern., L.L.C. v. Napoli*,

748 F.Supp. 2d 656 (S.D. Tex. 2010) (Atlas, J.). A motion to dismiss under Rule 12(b)(6) should only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## III.   ANALYSIS

### A. Under Texas Law, The "Eight-Corners Rule" Determines An Insurer's Duty To Defend.

The Court must apply Texas law in interpreting the insurance contracts at issue. Under Texas law, the ordinary rules of contract interpretation govern the interpretation of insurance contracts. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017). In interpreting an insurance contract, a court must ascertain the intent of the parties, as expressed in the written policy. *Id*. Court should examine the entire agreement and harmonize all provisions so that none are rendered meaningless. *Id*.

Absent any ambiguity, the contract's meaning can be decided as a matter of law. *National Union Fire Ins. Co. v. U.S. Liquids, Inc.,* 271 F. Supp.2d 926, 931 (S.D. Tex. 2003) (Johnson, J.); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). If the contract can be given a definite legal meaning, it is not ambiguous. *Id.* If it is subject to only one reasonable interpretation, it is unambiguous. *Nassar*, 508 S.W.3d at 258. If the policy is subject to two reasonable interpretations, it is ambiguous and must be construed strictly against the insurer, regardless of which interpretation is more reasonable. *Id.*

When considering whether an insurer has a duty to defend, the court examines the factual allegations in the underlying complaint and the language of the insurance policy. *Id.* This "eight-corners rule" or "complaint allegation rule" requires the court to focus on the factual allegations, not the legal theories. *Id.* Under this rule,

> the insurer's duty to defend is determined solely from the face of the pleadings and without reference to facts outside of the pleadings.

> Application of this complaint-allegation rule gives rise to a duty to defend if one or more of the plaintiff's claims, "if taken as true [are] sufficient to state a cause of action . . . within the terms of the policy."

*Rhodes v. Chicago Ins. Co.,* 719 F.2d 116, 119 (5th Cir. 1983); *see St. Paul Guardian Ins. Co. v. Centrum G S Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002) ("The duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy."); *Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1492 (5th Cir. 1992) ("If any allegation in the complaint is even potentially covered by the policy then the insurer has a duty to defend its insured."). The court need not determine the truth of the allegations to determine coverage under the policy. *National Union Fire,* 271 F. Supp.2d at 931.[5]

When a suit involves multiple amended complaints, the court must determine whether the duty to defend arises under any one of them.

> A complaint which does not initially state a cause of action under the policy, and so does not create a duty to defend, may be amended so as to give rise to such a duty. Likewise, a complaint which does allege a cause of action under the policy so as to create a duty to defend may be amended so as to terminate the duty. In the first instance, the insurer may properly refuse to defend before the amended complaint is filed, and in the second, the insurer may properly withdraw after the amendment is made.

*Rhodes,* 719 F.2d at 119; *see, e.g., Zurich American Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (duty to defend ended when the plaintiffs filed their second amended complaint).

When the complaint contains both claims that are covered and those that are not, the insurer must defend the entire suit.

> Whether a complaint pleads in the alternative or alleges more than one cause of action, the insurer is obligated to defend [the entire suit], as long

---

[5] In ruling on a motion to dismiss, the court ordinarily considers the allegations in the plaintiff's complaint, any attachments, and any attachments to the motion if they are referenced in the complaint and central to the claims. *Doe v. United States*, 853 F.3d 792, 800 (5th Cir. 2017). Here, because the eight corners rules controls the duty to defend determination, the Court will only consider Plaintiff's complaint and the insurance policies at issue, which were attached to Defendants' motion.

> as the complaint alleges at least one cause of action within the coverage of the policy. When the alleged cause of action is neither clearly without nor clearly within coverage, "the insurer is obligated to defend if there is, potentially, a cause under the complaint within the coverage of the policy."

*Rhodes*, *719* F.2d at 119 (citations omitted); *accord Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) ("if a complaint potentially includes a covered claim, the insurer must defend the entire suit."); *Zurich American Ins. Co.*, 268 S.W.3d at 500-01 (quoting 22 Holmes Appleman On Insurance § 136.2(D)) ("[W]hen there are covered and non-covered claims in the same lawsuit, the insurer is obligated to provide a defense to the entire suit, at least until it can limit the suit to those claims outside of the policy coverage.").

All doubt as to whether the complaint states a covered cause of action will be resolved in the insured's favor. *Zurich American Ins. Co.*, 268 S.W.3d at 491; *Rhodes*, *719* F.2d at 119.

### B. AZIC Owes A Duty To Defend Under The WC/EL Policy For Some, But Not All Entities and Petitions.

In this case, AZIC owes a defense to the defendants named in the Wynnewood Lawsuit "'if there is, potentially, a case under [the Mann-Smith Plaintiffs'] complaint within the coverage of the policy.'" *Zurich* American *Ins. Co.*, 268 S.W.3d at 491 (citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).

First, the Court must examine the policy to determine what it covers.

The WC/EL Policy limits coverage to an ***employer's*** claims as follows:

> A.     The Policy
>
> This policy includes as its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the ***employer*** named in Item 1 of the Information Page) and us (the insurer named on the Information Page).
>
> B.     Who is Insured
>
> You are insured if you are an ***employer*** named in Item 1 of the Information Page. . . .

*See* Defendants' Exhibit B, ECF No. 7-1 at 141 (emphasis added). Item 1 of the Information

Page identifies the "Named Insured." *Id*. at 124. In this case, Item 1 identifies CVR Energy as

the named insured. Item 1 also references the "Named Insured Endorsement." *Id.; see id*. at 126

(Named Insured Schedule, listing the entities that are named insureds under the policy).

> AZIC's duty to defend is limited to suits for ***covered*** claims as follows:

> > D.   We Will Defend

> > We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance….

> > We have no duty to defend a claim, proceeding or suit that is not covered by this insurance….

*Id*. at 143.  For a claim for bodily injury to be ***covered***, the "bodily injury must arise out of and in

the course of the injured employee's ***employment by you***." *Id*. at 142 (emphasis added).

> The WC/EL Policy further states:

> > We will pay all sums that ***you*** legally must pay as damages because of bodily injury to ***your employees***, provided the bodily injury is ***covered*** by this Employers Liability Insurance.

*Id*. at 142 (emphasis added).

Next, the Court must examine the allegations in the underlying lawsuit to determine

whether there is coverage, requiring AZIC to defend. Plaintiff argues that, under all petitions,

AZIC owed a defense to CVR Energy, CVR Partners, CVR Refining, Gary-Williams, and

Wynnewood, who are all insureds under the WC/EL policy and are named as defendants in the

Wynnewood Lawsuit. ECF No. 21 at 3. Defendants argue, on the other hand, that AZIC did not

have a duty to defend all entities named in the Wynnewood Lawsuit under all petitions. ECF No.

7 at 7. Rather, Defendants contend that under the various amended petitions filed in the

Wynnewood Lawsuit, AZIC only owed a defense to certain entities. *Id*. at 24.

### 1. AZIC's does not have a duty to defend Gary-Williams.

Defendants assert that Plaintiff's allegations that AZIC has a duty to defend Gary-Williams under the WC/EL policy should be dismissed because Gary-Williams was not alleged to be the decedents' employer under any of the petitions. *Id*. Therefore, Defendants assert, the claims against Gary-Williams are not covered under the WC/EL policy, which only covers claims for bodily injury that arise from injuries sustained in the course of an employee's employment for the employer.[6] *Id*. at 23-24.

Despite the fact that Gary-Williams was never alleged to be the decedents' employer under any of the petitions, Plaintiff argues that AZIC owes a defense to Gary-Williams because it is a named insured under the WC/EL Policy. *Id*. Under the WC/EL Policy, however, AZIC owes a defense only to **employers** who are named insureds. Exhibit B, ECF No. 7-1 at 141. Gary-Williams was not alleged to be the decedents' employer under any of the petitions in the Wynnewood Lawsuit. Therefore, Defendants' motion should be granted with respect to AZIC's duty to defend Gary-Williams under the WC/EL policy.

### 2. AZIC does not have a duty to defend CVR Refining.

Defendants correctly assert that AZIC does not owe a defense to CVR Refining because it was not a named insured under the WC/EL Policy at the time of the injury to the decedents in the Wynnewood Litigation. ECF No. 7 at 11-12. Plaintiff contests this claim, arguing that CVR Refining is, in fact, a named insured under the WC/EL Policy. ECF No. 21 at 10.

The WC/EL Policy's original Named Insured Schedule lists the following entities, among others, as named insureds:

---

[6] Prior to this lawsuit, Defendants refused to provide any defense to Gary-Williams, asserting that it was not a named insured under the policies. In their Motion to Dismiss, Defendants now concede ZAIC's duty to defend Gary-Williams under the CGL Policy. ECF No. 7 at 11, n. 3. On June 1, 2012, Gary-Williams changed its name to Wynnewood Energy Company, LLC, which is a named insured under both the WC/EL and CGL Policies.

> CVR ENERGY, INC.
> CVR PARTNERS, LP
> WYNNEWOOD REFINING COMPANY, LLC
> WYNNEWOOD ENERGY COMPANY, LLC[7]

*See* Exhibit B, ECF No. 7-1 at 126. CVR Refining was not included. *See id.* The effective date of the policy is July 1, 2012. *Id.* at 124.

The Named Insured Schedule was amended to add CVR Refining, LP. *Id.* at 243 (Workers Compensation Change Endorsement). The effective date of the change of endorsement is January 23, 2013. *Id.* Nothing in the endorsement indicates that the change applied retroactively and Plaintiff points to no such provision in the policy. Because the accident is alleged to have occurred four months before the change, on September 28, 2012, CVR Refining was not a named insured under the WC/EL policy. AZIC does not owe a defense to a defendant who was not a named insureds at the time of the accident.[8] *Id.* at 124, 126, & 141.  Therefore, Defendants' motion should be granted with respect to AZIC's duty to defend CVR Refining.

### 3. AZIC has a duty to defend Wynnewood under the Second, Third, and Supplemental Petitions.

Defendants assert that AZIC owed a defense to Wynnewood from the filing of the Second Amended Petition, when the Mann-Smith Plaintiffs first alleged that Wynnewood was the decedents' employer, until the filing of the Fourth Amended Petition, when it was dropped as a defendant. ECF No. 7 at 24. To the contrary, Plaintiff contends that AZIC owed a defense to Wynnewood under all petitions because "it is undisputed that [Wynnewood] was the decedents' wage-paying employer." ECF No. 21 at 8.

The allegations, not the truth, control whether there is coverage under the policy

---

[7] Wynnewood Energy was formerly Gary-Williams. *See supra,* fn. _.

[8] Defendants acknowledge that CVR Refining would be covered under the WC/EL Policy if it was a named insured. ECF No. 7 at 24, n. 9.

implicating the duty to defend. *National Union Fire,* 271 F. Supp.2d at 931. Despite Plaintiff's contention that Wynnewood paid decedents' wages, implying it actually was the employer, neither the Original Petition nor the First Amended Petition alleged that it was the decedents' employer. ECF No. 1 at 5. Thus, because Wynnewood was not alleged to be the decedents' employer, AZIC did not have a duty to defend Wynnewood under those petitions.

Under the Fourth and Fifth Amended Petitions, the Mann-Smith Plaintiffs dropped Wynnewood from the lawsuit. ECF No. 1 at 7-8. AZIC only owes a defense to alleged **employers** named as **defendants** in the Wynnewood Lawsuit. Exhibit B, ECF No. 7-1 at 142 ¶ B.1 (providing that AZIC will pay damages for which the insured is liable "by reason of a claim or suit against you"); *id. at* 143 ¶ *D* (providing a duty to defend "any claim, proceeding or suit against you."). Because Wynnewood was named as a defendant and alleged to be the decedents' employer only in the Second and Third Amended Petitions and the First Supplemental Petition, AZIC had a duty to defend it only as to those petitions. It did not have a duty to defend Wynnewood as to the Original Petition or the First, Fourth, and Fifth Amended Petitions. *See National Union Fire,* 271 F. Supp.2d at 931 (court need not determine the truth of the allegations to determine coverage). Defendants' motion should be granted as to AZIC's duty to defend Wynnewood as to those claims.

### 4. Under the Fourth and Fifth Amended Petitions, AZIC had no duty to defend CVR Partners but had a duty to defend CVR Energy.

Defendants assert that under the Fourth and Fifth Amended Petitions, AZIC did not have a duty to defend either CVR Energy or CVR Partners under the WC/EL Policy because Wynnewood, not CVR Energy or CVR Partners, was alleged to be the decedents' sole employer,

and CVR Partners was no longer named as a defendant. ECF No. 7 at 29.[9]

              *a.   AZIC did not owe a duty to defend CVR Partners when it was not a defendant.*

CVR Partners is not named as a defendant in the Wynnewood Lawsuit under either the Fourth or Fifth Amended Petition. ECF No. 1 at 7-8. AZIC only owes a defense to alleged **employers** named as **defendants** in the Wynnewood Lawsuit. Exhibit B, ECF No. 7-1 at 142 ¶ B.1 (providing that AZIC will pay damages for which the insured is liable "by reason of a claim or suit against you"); *id. at* 143 ¶ *D* (providing a duty to defend "any claim, proceeding or suit against you."). Therefore, AZIC did not owe CVR Partners a defense under these petitions.

              *b.   AZIC owes a duty to defend CVR Energy under the alter ego allegations.*

Although the Fourth and Fifth Amended Petitions do not explicitly allege that CVR Energy was the decedents' employer, both petitions purport to hold CVR Energy liable as their employer under an alter ego theory. ECF No. 21 at 11. An insurer has a duty to defend if the allegations are even *potentially* covered under the insurance policy." *St. Paul Guardian Ins.*, 283 F.3d at 713; *Enserch Corp.*, 952 F.2d at 1492. When analyzing the duty to defend under the eight corners rule, the court looks at the *factual*, not legal, allegations. *Nassar*, 508 S.W.3d at 258. Alter ego is a *legal* theory, which would seem to preclude finding a duty to defend on the basis of an alleged legal theory.

However, alter ego presents an unusual situation because it is a theory of vicarious liability, imposing liability on one legal entity for the acts of another. *AIX Specialty Ins. Co. v. SLJ Co., LLC,* No. 3:14-CV-0806-N, 2015 WL 12469125, at * 4 (N.D. Tex. March 24, 2015). It is not a freestanding claim that exists independently. There must be an underlying claim. *Id.* "[W]hen liability is premised . . . on theories of vicarious liability, in order to properly resolve

---

[9] Defendants do not challenge AZIC's duty to defend CVR Energy and CVR Partners under each of the petitions filed before the Fourth Amended Petition. *Id.* at 24.

any doubts in favor of the insured," it is appropriate to apply the alter ego theories for the purpose of determining whether a duty to defend arises. *Gemini Ins. Co. v. Austin Diversified Prods, Inc.,* No. 3:09-CV-02131-F, 2012 WL 12885059, at *5 (N.D. Tex. Dec. 14, 2012); *accord AIX Specialty Ins.,* 2015 WL 12469125, at * 4. If the underlying claim is covered, the alter ego claim will also be covered. *AIX Specialty Ins.,* 2015 WL 12469125, at * 4. If the underlying claim is excluded, the alter ego claim will also be excluded. *Id.* (on summary judgment excluding claim based on vicarious liability as precluded under the policy exclusion);  *Gemini Ins. Co.,* 2012 WL 12885059, at *5-8 (finding claims based on alter ego not covered as policy did not apply to the activities at issue).

In this case, Plaintiff alleges that the Mann-Smith Plaintiffs sought to impose liability on CVR Energy through the alter ego allegations based on the alleged negligence and other torts of Wynnewood, decedents' employer. ECF No. 21 at 11. Substituting CVR Energy for Wynnewood as the employer, these claims would fall within the policy's coverage for injury to the decedent employees in the course and scope of their employment for CVR Energy. *See Gemini Ins. Co.,* 2012 WL 12885059, at *5-8. Therefore, AZIC owes CVR Energy a defense under the Fourth and Fifth Amended Petitions and Defendants' motion should be denied with respect to CVR Energy.

### C. Plaintiff's $500,000 WC/EL Policy Deductible Payment Applies Toward $1 Million CGL Policy Self Insured Retention.

Although Defendants acknowledge that there is coverage under the CGL Policy for some of the named defendants in the Wynnewood Litigation, ECF No. 7 at 22, they move to dismiss Plaintiff's claim that its payment of the WC/EL Policy's $500,000 deductible counts toward the exhaustion of the CGL Policy's $1 million Self Insured Retention ("SIR"). ECF No. 7 at 24. Defendant argues that the SIR provides that it may be satisfied only when the insured makes its own payment and ZAIC has no duty to defend until it receives payment. Defendants further

14

assert that, because AZIC fronted the money for Plaintiff's claims, without first requiring payment of the deductible, Plaintiff cannot claim credit for the deductible towards the SIR, even though Plaintiff reimbursed AZIC for the deductible. *Id*. at 26-27.

The CGL Policy specifies that the SIR may be satisfied only by the insured's own payments.

> B. Payments By Others
>
> Payments by others, including but not limited to additional insureds or insurers, do not serve to satisfy your "self insured retention" obligations or your obligations for payment of "defense costs."
>
> . . .
>
> D. Other Self Insured Retention Provisions
>
> . . .
>
> 2. Your obligation to pay the Self Insured Retention Amount(s) is not fulfilled by:
>
>> a. The payment of "self insured retention" under any other policy; or
>>
>> b. Any payment made by us or another insurance company.

Exhibit A, ECF No. 7-1 at 41.

In this case, AZIC paid some of Plaintiff's claims, without subtracting the deductible, as required under the terms of the WC/EL Policy. Plaintiff later reimbursed AZIC for the deductible, as required under the terms of the WC/EL Policy. ECF No. 21 at 24. Because CVR Energy reimbursed AZIC, Plaintiff contends it "actually paid the deductible" and the deductible was not paid by "another insurance company." ECF No. 21 at 25-26.

Defendants concede that unless the insurance policy specifies otherwise, the SIR can be satisfied when another insurance provider makes payments on behalf of the insured. ECF No. 7 at 25 (citing *Continental* Cas. *Co. v. North American Capacity Ins. Co.*, 683 F.3d 79, 90 (5th Cir. 2012)). In this case, however, the CGL Policy "specifically requires that the insured pay the retention itself." *Id*. Defendants assert that, because AZIC first paid Plaintiff's claims up to the

15

amount of the deductible, and then received reimbursement for the deductible amount from Plaintiff, the deductible payment should be classified as "payments by others, including . . . additional insureds" and cannot satisfy the SIR. *Id*. at 26-27.

Here the Defendants and the Plaintiff have differing interpretations of the SIR provision. The Plaintiff's interpretation is reasonable. The Defendants' interpretation is not reasonable. Plaintiff asserts that, absent a specific exclusion, the deductible for the WC/EL policy should apply to the SIR. ECF No. 21 at 25. Defendants do not challenge this interpretation. Instead, they suggest that, because AZIC fronted the money for the deductible, Plaintiff cannot satisfy the SIR even though Plaintiff actually reimbursed AZIC for the full amount of the deductible. ECF No. 7 at 26. Defendants' interpretation defies common sense and has no support in the language of the policy. To the contrary, the CGL Policy specifically provides that the payment of a SIR under another policy does not satisfy the SIR under this policy. ECF No. 7-1 at 41 ¶ I.D.2.a. It did not say that a deductible paid under another policy could not satisfy the SIR. *See id.* In fact, the policy language differentiates between the insured's SIR and deductible obligations. The CGL Policy specifically provides that the insureds obligation to pay the deductible under that policy is in addition to the SIR and the SIR must be satisfied first. *Id.* at 41 ¶ I.D. Thus, the CGL Policy does not exclude a deductible paid under another policy from satisfying the SIR and the fact that AZIC paid the deductible and Plaintiff then reimbursed AZIC does not mean that Plaintiff did not pay the deductible.

Because there is only one reasonable interpretation, the Court can construe the policy as a matter of law that the deductible Plaintiff paid under the WC/EL policy satisfies the SIR. Even if the policy were ambiguous, the Court would be required to construe it in favor of the insured. *Nassar*, 508 S.W.3d at 258. Therefore, Defendants' motion with respect to the SIR should be

denied.

**D. Defendants' Motion To Dismiss Plaintiff's Claims Under Sections 541.060(a) and 541.061 Of The Texas Insurance Code Should Be Denied.**

In its Complaint, Plaintiff alleges that Defendants "knowingly engaged in . . . unfair methods of competition and/or deceptive acts or practices in violation of Texas Insurance Code §§ 541.060(a) and 541.061." ECF No. 1 at 20. In their Motion to Dismiss, Defendants assert that Plaintiff's claims under these statutes should be dismissed to the extent they misstate Defendants' coverage obligations. ECF No. 7 at 27. In their Reply, however, Defendants abandoned this argument. ECF No. 22 at 7-8. Therefore, Defendants' motion should be denied as to Plaintiff's claims under Texas Insurance Code §§ 541.0060(a) and 541.061.

**E. Plaintiff Has No Private Right of Action Claims Under Section 542.003 Of The Texas Insurance Code.**

Because § 542.003 of the Texas Insurance Code does not give rise to a private cause of action, Defendants assert, Plaintiff's claims based on this statute should be dismissed.[10] ECF No. 7 at 28. Plaintiff denies asserting any claim under this statutory provision. ECF No. 21 at 9. "The language of the [Texas Insurance] Code, its legislative history, and court interpretations of the Code suggest that only the Texas Department of Insurance can bring a claim under section 542.003." *Terry v. Safeco Ins. Co. of America*, 930 F.Supp.2d 702, 714 (S.D. Tex. 2013) (Rosenthal, J.) (citing *Great American Assur. Co. v. Wills*, 2012 WL 3962037, at *2

---

[10] The language of Plaintiff's Complaint invokes § 542.003(b)(2) and § 542.003(b)(5):

> 85(4). Zurich failed to acknowledge with reasonable promptness pertinent communications relating to a claim arising under Zurich's WC/EL Policy . . . which constitutes an unfair claims settlement practice in violation of § 542.003(b)(2); and

> (5) Zurich compelled CVR Energy to institute this suit to recover the amounts due under the WC/EL Policy, which constitutes an unfair claims settlement practice in violation of § 542.003(b)(2).

ECF No. 1 at 22-23.

(W.D. Tex. 2012). Therefore, Plaintiff's claims under section 542.003 fail as a matter of law and should be dismissed.

### F.  Plaintiff Has No Claim Based Upon The Reservation Of Rights Letter.

On May 6, 2015, Defendants sent Plaintiff a letter ("the May 6 Letter") stating that "all insured parties [were] now eligible for a defense under the [WC/]EL Policy." ECF No. 1 at 10. An email accompanying the May 6 Letter stated that "[o]n a go forward basis, from the time [Defendants] received the new pleading, [Defendant would] pay all invoices off the two CVR EL files." *Id*. Defendants did not retract this statement until September 30, 2015. ECF No. 21 at 28. In its Complaint, Plaintiff alleges that Defendants conceded a duty to defend "all CVR Entities" under the WC/EL Policy" in the May 6 Letter but "never made any payment to CVR Energy for [related] defense costs." ECF No. 1 at 18-19.

Defendants assert that Plaintiff's claims based on this alleged concession of liability fail to state a claim upon which relief may be granted. ECF No. 7 at 28. The May 6 Letter was a "unilateral reservation-of-rights letter," Defendants contend, and therefore "cannot create rights not contained in the insurance policy." *Texas Ass'n of Ctys. County Gov't Risk Mgmt. Pool v. Matagorda County*, 52 S.W.3d 128, 133 (Tex. 2000). Defendants further assert that there was no consideration for the agreement to provide a defense to the CVR Entities. ECF No. 7 at 28.

A unilateral reservation of rights is a "notice given by the insurer that it will defend but reserves all rights it has based on noncoverage under the policy." *Hartford Underwriters Ins. Co. v. Foundation Health Services Inc.*, 524 F.3d 588, 600 n. 2 (5th Cir. 2008) (citing 14 Lee R. Russ & Thomas F. Segalla, Couch On Insurance § 202:38 (3d ed. 2007). As a unilateral reservation of rights letter, the May 6 Letter does not create rights not contained in the underlying policy. *Id.* In its response, Plaintiff claims that it does not assert an independent claim based upon the letter, but merely uses it as evidence illustrative of Defendants' alleged breach of

18

contract and other violations. ECF No. 21 at 16-17.

To the extent that Plaintiff asserts an independent claim based upon the May 6 Letter, Defendants' motion should be granted.[11]

### G. Plaintiff's Claims Against ZAIC, But Not AGLIC, Based On the WC/EL Policy Should Be Dismissed.

Defendants assert that neither ZAIC nor AGLIC owe a duty to defend under the WC/EL Policy because only the underwriting entity owes the obligation to defend, which, in this case, is AZIC. ECF No. 7 at 28-29. In its Response, Plaintiff concedes that ZAIC owes no duty to defend under the WC/EL Policy. ECF No. 21 at 30. Therefore, Plaintiff's claims against ZAIC based upon the WC/EL should be dismissed.

As to AGLIC, Plaintiff contends that AGLIC is a proper party with respect to the duty to defend under the WC/EL Policy because its obligation to defend and indemnify under the Umbrella Policy will be impacted. *Id*. The Umbrella Policy lists the both the CGL and the Employers Liability portion of the WC/EL Policy as underlying policies on the Schedule of Underlying Insurance. ECF No. 7-1 at 250. Thus, the Umbrella Policy *potentially* provides coverage for the claims asserted in this case pursuant to the Employers Liability underlying policy. ECF No. 1 at 2; ECF No. 21 at 30. Under the Umbrella Policy, there is both Coverage A. Excess Follow Form Liability Insurance and Coverage B. Umbrella Liability Insurance. ECF No. 7-1 at 254.  The Policy further provides AGLIC with a right and duty to assume the "defense of any **suit** against the **insured** for damages covered by this policy." *Id.* at 255 ¶ A. (emphasis in original for defined terms). Under Coverage A, the excess provision, the duty to defend applies when the underlying insurance has been exhausted. *Id.* at 255 ¶ A. 1. Under Coverage B, the

---

[11] However, this recommendation is not intended to have any effect to the extent Plaintiff relies on this letter as evidence of Defendants' breach of contract or other alleged violations. All evidentiary matters will be ruled on at the time of trial.

umbrella provision, the duty to defend applies "when damages are sought for **bodily injury** . . . to which no **underlying insurance** or **other insurance** applies." *Id.* at 255 ¶ A. 2. Since there is underlying insurance, Coverage B is inapplicable. In contrast, Coverage A appears to provide coverage once the underlying WC/EL Policy is exhausted; thus, the underlying policy triggers AGLIC's duty to defend for the claims asserted, satisfying Plaintiff's burden to show that a *potential* claim falls within the policy.

Defendants have not pointed to any exclusion under the Umbrella Policy that would apply. *See Northfield Ins. Co.*, 363 F.3d at 529 (once plaintiff has shown the alleged facts state a potential claim, insurer bears the burden to show a policy exclusion or limitation applies). The exclusions section of the Umbrella Policy specifically excludes coverage for employees hurt on the job, but this provision is limited to Coverage B and there is no such exclusion for Coverage A. *Id.* at 260 ¶C. 2. Therefore, Defendants have failed to show that Plaintiff's claims against AGLIC should be dismissed.

### CONCLUSION

Therefore, the Court recommends that Defendants' Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Defendants' Motion to Dismiss should be **GRANTED** with respect to Plaintiff's claim(s):

    a.  that AZIC owed Gary-Williams a defense;

    b.  that AZIC owed CVR Refining a defense;

    c.  that AZIC owed Wynnewood a defense under the Original Petition or the First, Fourth, and Fifth Amended Petitions;

    d.  that AZIC owed CVR Partners a defense under the Fourth and Fifth Amended Petitions;

    e.  that ZAIC owed a duty to defend under the WC/EL Policy.

f.  under section 542.003 of the Texas Insurance Code; and

g.  to the extent Plaintiff asserts an independent claim based upon Defendants' May 6, 2015 reservation of rights letter.

(2) Defendants' Motion to Dismiss should be **DENIED** with respect to Plaintiff's claim(s):

a.  that AZIC owed CVR Energy a defense under the Fourth and Fifth Amended Petitions;

b.  against AGLIC;

c.  that payment of the WC/EL Policy's deductible satisfies the CGL Policy's SIR; and

d.  under sections 541.060(a) and 541.061 of the Texas Insurance Code.

**The parties have fourteen days from the service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72. Failure to file timely objections may preclude appellate review of factual findings or legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on February 12, 2018, at Houston, Texas.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**

21