IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CVR ENERGY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:17-cv-1284 |
| AMERICAN ZURICH INSURANCE | § | |
| COMPANY, ZURICH AMERICAN | § | |
| INSURANCE COMPANY & AMERICAN | § | |
| GUARANTEE & LIABILITY | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS AMERICAN ZURICH INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY, AND AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

Blair Dancy-Attorney in Charge
State Bar No. 24001235
Southern District ID No. 619381
bdancy@cstrial.com
Zachary H. Bowman
State Bar No. 24073944
Southern District ID No. 1312136
zbowman@cstrial.com
**CAIN & SKARNULIS PLLC**
400 W. 15th Street, Suite 900
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile
**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

**Page**

Table of Contents...............................................................................................................2

Index of Authorities..........................................................................................................4

I.     Nature and Stage of the Proceeding.......................................................................6

II.    Issues .....................................................................................................................7

III.   Argument ............................................................................................................. 8

      A.     Summary Judgment Standard .................................................................. 8

      B.     Background .................................................................................................9

      C.     To the extent CVR "alter ego" principals are "employees for
              Purposes of the WC/EL Policy, they should also be treated
              as employers for purposes of the CGL Policy.  The Employer's
              Liability exclusions apply, and there is no coverage under the
              CGL Policy for those "alter ego" entities ......................................................11

      D.     For the same "alter ego" reasons, AGLIC does not owe a
              Defense to CVR Refining.............................................................................. 14

      E.     CVR has the burden to prove coverage, prove defense costs are
              reasonable, and allocate between covered and uncovered
              defense costs............................................................................................... 15

      F.     As the EL and CGL coverages do not overlap, CVR is unable to
              carry its burden to prove defense costs expended under the
              WC/EL Policy are the same as the defense costs spent under the
              CGL Policy (SIR endorsement), as a matter of law.....................................18

      G.     The Fifth Circuit does not recognize recovery of covered legal
              expenses "inextricably intertwined" with uncovered legal
              expenses.  Even if it did, here the defense payments under the
              WC/EL Policy and under the CGL Policy SIR are separate and
              independent and CVR Energy cannot allocate as a matter of law..............19

      H.     CVR Energy's remaining damages claims fail as a matter of
              law in respect to the duty to defend ...........................................................22

      I.     CVR Energy's claims in respect to the duty to indemnify are
              premature until such time as all underlying claims are resolved...............24

IV.    Summary Judgment Evidence ...................................................................25

V.    Prayer ........................................................................................................25

Certificate of Service...........................................................................................26

# INDEX OF AUTHORITIES

**CASE**                                                                 **PAGE**

*ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*,
 699 F.3d 832 (5th Cir. 2012)..................................................................15

*Aldous v. Darwin Nat'l Assurance Co.*, 851 F.3d 473 (5th Cir. 2017),
 *separate holding vacated on reh'g*, 889 F.3d 798 (5th Cir. 2018)..............20

*Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210 (Tex. 1988)....................24

*Arrellano v. State Farm Fire & Casualty Co.*, 191 S.W.3d 852
 (Tex. App.—Houston [14th Dist.] 2006, no pet.)........................................12

*Boudreaux v. Swift Transp. Co.*, 402 F.3d 536 (5th Cir.2005).............................8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .....8

*Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*,
 892 F.3d 167 (5th Cir. 2018) ........................................................17, 18

*Cont'l Cas. Co. v. N. Am. Capacity Ins. Co.*, No. CV H-05-3252, 2010
 WL 11519188, at *8 (S.D. Tex. Jan. 13, 2010) ), *report and
 recommendation adopted*, CV H-05-3252, 2010 WL 11519264
 (S.D. Tex. Feb. 8, 2010) (J. Lake), *aff'd in part, rev'd in part on
 other grounds*, 683 F.3d 79 (5th Cir. 2012).................................................16

*DIRECTV, Inc. v. Robson*, 420 F.3d 532 (5th Cir.2005) ........................................8

*Fiess v. State Farm Lloyds*, 392 F.3d 802 (5th Cir. 2004)....................................17

*Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589 (5th Cir. 2011)....................15

*Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*,
 444 S.W.2d 583 (Tex. 1969)..........................................................................21

*Harken Expl. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466 (5th Cir. 2001)...........15

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*,
 379 F.3d 293 (5th Cir.2004) ........................................................................8

*Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857
 (5th Cir. 2006).....................................................................................12, 13

*Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347 (5th Cir.2005) ................................8

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994) .......................... 8

*LJC Fin., LLC v. Alliant Nat. Title Ins. Co.*, No. CIV.A. H-14-648,
    2014 WL 7190872, at *6 (S.D. Tex. Dec. 16, 2014) (J. Rosenthal) ............. 23

*Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597 (Tex. 1993)...................... 17

*Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, 84 F. Supp. 3d
    553 (S.D. Tex. 2015) (J. Rosenthal) .......................................... 8, 23

*Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765
    (Tex. 2007) ...........................................................7 ,22

*Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*,
    649 F.Supp.2d 613 (S.D. Tex. 2009) .......................................... 17

*Page v. JP Morgan Chase Bank, N.A.*, 605 Fed. Appx. 272 (5th Cir. 2015) .......... 23

*Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546 (5th Cir. 2004) ....... 16

*Starr Surplus Lines Ins. Co. v. Seibert Enterprises, LLC*,
    No. CV H-16-3490, 2017 WL 3142443, at *3
    (S.D. Tex. July 25, 2017) (J. Rosenthal)...................................... 15

*Texas Farmers Ins. Co. v. Soriano*, 844 S.W.2d 808
    (Tex. App.—San Antonio 1992), *rev'd on other grounds*,
    881 S.W.2d 312 (Tex. 1994)........................................................ 24

*Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012)............................... 24

*Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687,
    (5th Cir. 2010) ...........................................................17, 22

*USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018) ..................... 23, 24

*Wallis v. United Servs. Automobile Assoc.*, 2 S.W.3d 300
    (Tex. App.—San Antonio 1999, pet. denied)................................. 17

*Webb v. Jorns*, 488 S.W.2d 407 (Tex. 1972)........................................... 10

*Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233 (5th Cir.2003) ..... 8

## RULES AND STATUTES

Fed. R. Civ. P. 56.................................................................. 8

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants American Zurich Insurance Company ("AZIC"), Zurich American Insurance Company ("ZAIC"), and American Guarantee & Liability Insurance Company ("AGLIC") and file their Motion for Summary Judgment and would respectfully show the Court as follows:

## I.     NATURE AND STAGE OF THE PROCEEDING

This insurance coverage suit concerns which of two policies provides coverage for the plaintiff and related non-party entities ("CVR entities") in underlying wrongful death and survivor litigation pending in Fort Bend County, Texas state district court, and the treatment of a self-insured retention under one of the policies. This suit was filed April 26, 2017, and the parties have not engaged in any discovery.

On July 18, 2017, the Court referred Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) and 12(c) [Doc. 7] to United States Magistrate Judge Dena Palermo. *See* Order of Referral [Doc. 20]. On February 12, 2018, the Magistrate made her Report and Recommendation [Doc. 27] to which Defendants objected [Doc. 29]. The Court adopted the Report and Recommendation and prematurely dismissed the suit [Docs. 32 & 33]. On March 28, 2018, the Court withdrew both the order adopting the Report and Recommendation and the Final Judgment [Doc. 36] and again withdrew the Final Judgment on April 3, 2018 [Doc. 37]. On April 18, 2018, the Court referred all further proceedings to United States Magistrate Judge Dena Palermo per 28 U.S.C. § 636 [Doc. 38]. The Report and Recommendation and Defendants' objections to it remain pending. This Motion for Summary Judgment is filed conditioned on the Court overruling Defendants' objections and re-adopting the Report and Recommendation.

Plaintiff's expert designation deadline was August 2, 2018. Plaintiff did not designate experts.

## II.　ISSUES

The following issues are presented in respect to the duty to defend:

- ZAIC has no duty to defend CVR Energy or CVR Refining under its CGL Policy based on the Employer's Liability exclusion, to the degree the Magistrate's Report is adopted without modification in respect to the underlying "alter ego" claims.

- For the same reasons, there should be no duty to defend CVR Energy or CVR Refining under the AGLIC Policy.

- CVR Energy cannot prove the defense costs are reasonable.

- CVR Energy cannot carry its burden to allocate between covered and uncovered defense costs in respect to any specific insured and policy.

- CVR Energy paid its deductible in relation to workers' compensation benefits, not defense costs. CVR Energy cannot carry its burden to allocate any of its deductible payment under the WC/EL Policy to the CGL Policy self-insured retention as a matter of law.

- Covered defense costs cannot be "inextricably intertwined" with uncovered costs, so CVR Energy cannot carry its burden to allocate defense costs paid under the WC/EL Policy to the CGL Policy self-insured retention as a matter of law.

- Even if specific defense costs could fall under both the CGL and WC/EL Policies (which Defendants deny), the coverages are pro rata, separate, and independent under *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765 (Tex. 2007). CVR Energy cannot carry its burden to allocate defense costs paid under the WC/EL Policy to the CGL Policy self-insured retention as a matter of law.

- Plaintiff cannot show any damages in relation to its claims for a duty to defend by Defendants.

Summary judgment is appropriate on all claims based upon the duty to defend. Remaining claims concerning the duty to indemnify are premature, as the underlying litigation has not been fully settled or adjudicated.

# III.    ARGUMENT

## A.    *Summary Judgment Standard*

The relevant standard for summary judgment for this motion is as follows:

> Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." . . . "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine[dispute] of material fact." If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." . . . Although the party moving for summary judgment must demonstrate the absence of a genuine dispute as to any material fact, it does not need to negate the elements of the nonmovant's case. . . . A dispute "is material if its resolution could affect the outcome of the action.'" . . .

> When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." . . . "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a "scintilla" of evidence.'"

*Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, 84 F. Supp. 3d 553, 559–60 (S.D. Tex. 2015) (J. Rosenthal) (citing and quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir.2005); *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir.2005); *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir.2005); *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir.2003); *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir.2004); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)); Fed. R. Civ. P. 56.

## B.     Background

Russell Mann and Billy Smith were killed as a result of an exploding steam boiler at an Oklahoma refinery on September 28, 2012, according to allegations in the Underlying Lawsuit. Five entities, ostensibly under common ownership by (and including) the first named insured CVR Energy, Inc. ("CVR Energy"), were sued in Texas state court, with two of those entities eventually non-suited. The petition has been amended five times and supplemented once, with allegations changing concerning the employment of the decedents over time, implicating both Exclusion e. Employer's Liability under the CGL policy issued by ZAIC and the coverage grant under employer's liability coverage under the WC/EL policy issued by AZIC. *See* Exhibit A at 44; Exhibit B at 19.

The Original Petition in the Underlying Lawsuit was filed September 30, 2013 against CVR Energy; CVR Partners, LP; CVR Refining, LP;[1] Gary-Williams Energy Company, LLC; and Wynnewood Refining Company, LLC. *See* Exhibit D, ¶¶ 4-8. It has been amended and supplemented as follows:

Exhibit E:     First Amended Petition filed 09-17-2014

Exhibit F:     Second Amended Petition filed 11-07-2014

Exhibit G:     Third Amended Petition filed 04-06-2015

Exhibit H:     First Supplemental Original Petition filed 05-29-15

Exhibit I:     Fourth Amended Petition filed 09-14-2015

Exhibit J:     Fifth Amended Petition filed 09-15-2015

Over the course of the litigation, the allegations have varied concerning whether CVR Energy, CVR Partners, LP, CVR Refining, Inc., or Wynnewood Refining Company,

---

[1] The underlying petitions alternatively call this entity CVR Refining, *Inc.* For purposes of this motion, Defendants assume that Plaintiff is correct in alleging that the correct entity is CVR Refining, LP. *See* Complaint at ¶ 11 (defining CVR Refining, *LP* as "CVR Refining" throughout).

LLC ("Wynnewood") employed Russell Mann and Billy Smith. The Fifth Amended Petition does not allege that any of the remaining defendant CVR entities employed the decedents, alleging that the only employer was Wynnewood. *See* Exhibit J at ¶¶ 5-7 & 12. Wynnewood has been dropped from the Underlying Lawsuit, effectively dismissing Wynnewood without prejudice. *See generally id.*; *see also Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex. 1972) (omitting a defendant operates as a voluntary dismissal without prejudice).

ZAIC issued Policy No. GLO 9267657-02 to first-named insured CVR Energy, effective July 1, 2012 to July 1, 2013, with limits of $1,000,000 per occurrence and $2,000,000 aggregate ("CGL Policy"). The CGL Policy has a $1,000,000 SIR. *See* Exhibit A at 34-35.

AZIC issued Policy No. WC 9267659-02 to first-named insured CVR Energy, effective July 1, 2012 to July 1, 2013, with limits of $1,000,000 per accident for employer's liability coverage ("WC/EL Policy"). The WC/EL Policy has a $500,000 deductible. *See* Exhibit B at 1, 80.

AGLIC issued Policy No. UMB 9267786-02 to first-named insured CVR Energy, effective July 1, 2012 to July 1, 2013, with limits of $25,000,000 per occurrence for coverage excess to the ZAIC CGL Policy and AZIC WC/EL Policy ("Excess Policy"). *See* Exhibit C at 1.

CVR Energy has brought claims based on an erroneous reading of coverages under these policies, and Defendants expressly preserve and do not waive their positions. Nevertheless, as alternative relief, Defendants seek declarations as requested herein for consistency among the affected parties.

**C.** **To the extent CVR "alter ego" principals are "employers" for purposes of the WC/EL Policy, they should also be treated as employers for purposes of the CGL Policy. The Employer's Liability exclusions apply, and there is no coverage under the CGL Policy for those "alter ego" entities.**

The Report recommends that the WC/EL Policy provide coverage to CVR Energy in respect to the Fourth and Fifth Amended Petitions, "[s]ubstituting CVR Energy for Wynnewood as the employer" by virtue of the alter-ego allegations. *See* Report at 13–14. The Report does not address coverage under the CGL Policy in respect to these same allegations.

Coverage under the WC/EL Policy and CGL Policy are complementary insofar as the CGL Policy excludes employee claims that may otherwise fall within the WC/EL Policy coverage grant. The CGL Policy requires that ZAIC defend an insured against any suit seeking damages because of "bodily injury" to which the insurance applies. *See* Exhibit A, CGL Policy, at 43 (Commercial General Liability Coverage Form, Form CG 00 01 12 07 (ISO 2006)). However, coverage is subject to certain exclusions, including the Employer's Liability exclusion:

> e. Employer's Liability
>
> "Bodily injury" to:
>
> (1) An "employee" of the insured arising out of and in the course of:
>
>> (a) Employment by the insured; or
>> (b) Performing duties related to the conduct of the insured's business; or
>
> (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.
>
> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

> This exclusion does not apply to liability assumed by the insured under an "insured contract".[2]

*See id.* at 44 (Coverage A Bodily Injury And Property Damage Liability, 2. Exclusions, e.).

The court of appeals addressed a materially identical exclusion in *Arrellano v. State Farm Fire & Casualty Co*., 191 S.W.3d 852, 856 (Tex. App.—Houston [14th Dist.] 2006, no pet.).[3] "Proving course and scope of employment requires showing [the deceased employee] was acting (1) within the general authority given him, (2) in furtherance of the employer's business, and (3) for the accomplishment of the object for which the employee was employed." *Id.* at 856–57. In the context of the duty to indemnify the insured for the underlying judgment, the court reviewed the factual sufficiency of the evidence presented in a bench trial, in which the lower court found no coverage. *Id.* at 854–55. The evidence showed that the decedent had returned to a completed trench toward the end of the workday, when he and other workers were performing clean-up activities and still on the clock. *Id.* at 858. The decedent's supervisor testified the trench had already been cleaned and that he did not instruct the decedent to return to the trench. *Id.* Nevertheless, the court found sufficient circumstantial evidence to support the finding that the decedent had been in the course and scope of employment, and thus, the exclusion applied. *Id.*

This standard mirrors the standard in Part Two of the WC/EL Policy. Thus, the same test that applies to determine whether the CGL exclusion applies should also determine whether the claim falls within this coverage grant. *See also generally Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr*., 468 F.3d 857, 862 (5th Cir. 2006) (in the context

---

[2] We are not aware of any insured contract at issue here.

[3] The exclusion excluded coverage for bodily injury to: ""(1) An employee of the insured arising out of and in the course of employment by the insured; or (2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above." *Id.* at n.1.

of determining whether injuries arose out of the use of an auto, finding "the inclusion of similar language in the auto and CGL policies indicates an intent by the companies involved to avoid overlapping coverage").

To the extent this Court holds that a defense was owed to CVR Energy under the WC/EL Policy based on the alter-ego allegations in the Fourth and Fifth Petitions, a defense is not owed under the CGL Policy due to the Employer's Liability coverage. There is no overlapping coverage.

Further, the Fourth and Fifth Amended Petitions treat CVR Energy and CVR Refining the same. *See* Exhs. I and J. The Report had determined CVR Refining was not owed a defense under the WC/EL Policy, because it was not a named insured for purposes of the underlying occurrence. *See* Report at 10–11. Nevertheless, the Court's ruling should be consistent in respect to the duty to defend and these policies.

There is no genuine dispute as to any material fact, and Defendants are entitled to judgment as a matter of law. To the degree the Report is adopted,[4] ZAIC does not owe CVR Energy or CVR Refining a defense under the CGL Policy.

---

[4] To the degree the Court declines to adopt the Report and sustains Defendants' objections, the coverage should be as follows:

| PETITION | CGL POLICY | WC/EL POLICY | DATE |
|---|---|---|---|
| Original & First Amended Petitions | Gary-Williams and Wynnewood | CVR Energy; CVR Partners, LP | 9-30-13 |
| Second Amended, Third Amended, and First Supplemental Original Petition | Gary-Williams | CVR Energy; CVR Partners, LP; Wynnewood | 11-7-14 |
| Fourth & Fifth Amended Petitions | CVR Energy; CVR Refining; and Gary-Williams | None | 9-14-15 |

**D.** *For* **the same "alter ego" reasons, AGLIC does not owe a defense to CVR Refining.**

The AGLIC Policy does not provide for a duty to defend here. Under Coverage A, AGLIC has a duty to defend when there is a duty to defend under an underlying policy and the limits of all underlying coverage is exhausted. Under Coverage B, AGLIC has a duty to defend when there is no underlying coverage and the claim otherwise falls within coverage under Coverage B. Neither circumstance applied here.

Under Coverage A, any given insured must first show coverage under an underlying policy, and then show that all underlying coverages have been exhausted. *See* Exh. C, AGLIC Policy at 50 (Commercial Umbrella Amendatory, Form U-UMB-200-A CW (07/99), A.1.A.1.).[5] As noted above, there is no coverage under the CGL Policy for CVR Energy or CVR Refining. To the extent there is coverage under the WC/EL Policy for CVR Energy, that policy has not been exhausted. Per the Report, there is no coverage under the WC/EL Policy for CVR Refining. Thus, there can be no coverage under Coverage A of the AGLIC Policy for either CVR Energy or CVR Refining.[6]

Under Coverage B, there is an Employee Injury exclusion that is materially identical to the exclusion in ZAIC's CGL Policy:

C. Under Coverage B this policy does not apply to:

***

EMPLOYEE INJURY

2. Any injury to:

---

[5] "A. We have the right and duty to assume control of the investigation and settlement of any claim, or defense of any suit against the insured for damages covered by this policy:

"1. Under Coverage A, when the applicable limit of underlying insurance and other insurance has been exhausted by payment of claims for which coverage is afforded under this policy; . . . ."

[6] If the WC/EL Policy is eventually exhausted, there could be a duty to defend under the AGLIC Policy as to CVR Energy, but that circumstance is not currently before the Court.

a. An employee of the insured arising out of and in the course of:

> (1) Employment by the insured; or

> (2) Performing duties related to the conduct of the insured's business; or

b. Any injury to the spouse, domestic partner, child, parent, brother, or sister of that employee as a consequence of exclusion 2.a. above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, or to any obligation to share damages with or repay someone else who must pay damages because of an injury.

*See* Exh. C, AGLIC Policy at 12 (Commercial Umbrella Liability Policy, Form U-UMB-103-C CW (03/10), Section IV.C.). *Compare* Exh. A, CGL Policy at 44 (Commercial General Liability Coverage Form, Coverage A Bodily Injury And Property Damage Liability, 2. Exclusions, e.). Thus, the analysis that applies above the CGL Policy should also apply to Coverage B under the AGLIC Policy. To the degree the Report is adopted, neither CVR Energy nor CVR Refining are entitled to a defense under the AGLIC UMB Policy.

### E. *CVR has the burden to prove coverage, prove defense costs are reasonable, and allocate between covered and uncovered defense costs.*

The insured has the burden to prove a duty to defend. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012) (citing *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011)); *Harken Expl. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001); *see also Starr Surplus Lines Ins. Co. v. Seibert Enterprises, LLC*, No. CV H-16-3490, 2017 WL 3142443, at *3 (S.D. Tex. July 25, 2017) (J. Rosenthal). As for the defense costs sought, CVR Energy must prove its defense costs are reasonable:

The Fifth Circuit has stated: 'A breach of the duty to defend entitles the insured to the expenses it incurred in defending the suit, including *reasonable* attorney's fees and court costs.'

*Cont'l Cas. Co. v. N. Am. Capacity Ins. Co.*, No. CV H-05-3252, 2010 WL 11519188, at *8 (S.D. Tex. Jan. 13, 2010), *report and recommendation adopted*, CV H-05-3252, 2010 WL 11519264 (S.D. Tex. Feb. 8, 2010) (J. Lake), *aff'd in part, rev'd in part on other grounds*, 683 F.3d 79 (5th Cir. 2012) (quoting *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 559 (5th Cir. 2004) with added emphasis).

Further, to the degree the Report is adopted, the coverages under the policies would be as follows, with CVR Refining not entitled to a defense under any policy:

| PETITION | CGL POLICY | WC/EL POLICY | DATE |
|---|---|---|---|
| Original & First Amended Petitions | Gary-Williams and Wynnewood | CVR Energy; CVR Partners, LP | 9-30-13 |
| Second Amended, Third Amended, and First Supplemental Original Petition | Gary-Williams | CVR Energy; CVR Partners, LP; Wynnewood | 11-7-14 |
| Fourth & Fifth Amended Petitions | Gary-Williams | CVR Energy | 9-14-15 |

These CVR entities have been represented through one counsel in the underlying suit. Despite the possibility that the CVR entities and Defendants may have agreed on allocating defense costs equally between the CGL and EL coverages, the CVR entities[7] have refuted any potential agreement. *See* Cross-Claim [Doc. 40] at ¶ 110; Answer to Cross-Claim [Doc. 43] at ¶ 10. Thus, CVR Energy retains the burden to allocate between covered and uncovered claims:

> An insurer is liable only for losses covered by the policy. Accordingly, '[w]hen covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage.'

---

[7] Defendants filed a motion to join the various CVR entities early in this litigation as necessary parties. *See* Doc. 8. In lieu of bringing them in as parties, those entities agreed that this litigation would be as binding on them as on CVR Energy, Inc., the plaintiff. To the degree CVR Energy has refuted an agreement on allocation, if any has been reached, all the CVR entities are bound by CVR Energy's position in this litigation.

*Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993) and citing *Fiess v. State Farm Lloyds*, 392 F.3d 802, 807–08 (5th Cir. 2004)); *see also Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*, 649 F.Supp.2d 613, 649 (S.D. Tex. 2009); *Wallis v. United Servs. Automobile Assoc.*, 2 S.W.3d 300, 303 (Tex. App.— San Antonio 1999, pet. denied).[8]

Here, defense costs for any given CVR entity (other than CVR Refining) fall under either the CGL or WC/EL Policies. For example, the defense costs for Gary-Williams fall under the CGL Policy only and are not covered under the WC/EL Policy. The flip side of this coin is also true: Defense costs for CVR Energy and CVR Partners are covered only by the WC/EL Policy but not the CGL Policy. Defense costs spent on Wynnewood would fall under the CGL Policy for the Original and First Amended Petitions, but under the WC/EL Policy for the Second Amended, Third Amended, and First Supplemental Original Petitions. As for defense costs spent on CVR Refining, they would not be covered under any policy, despite CVR Refining benefiting from the singular defense counsel that the CVR entities insisted on.

This difference is material. The "alter-ego" entities are defending claims based on employer-oriented claims, as acknowledged by CVR Energy. *See* Brief in Opposition to Motion to Dismiss [Doc. 21], p.12 ("The Mann-Smith Plaintiffs do not identify duties of care allegedly owed to decedents and breached by CVR Energy or CVR Refining other than those of an employer."). The underlying petitions never allege that either Gary-

---

[8] Unless otherwise provided by the policy, an "insurer has a duty to provide a *complete* defense" to a given insured, even if only some of the claims are potentially covered. *See Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 695 (5th Cir. 2010). However, the issue here is not whether a defense is owed for only *some claims*, but rather, whether a defense is owed for only *some insureds* under each separate policy.

Williams or Wynnewood are alter-egos of any entity. In fact, Wynnewood was the actual employer, and the underlying petitions do not assert alter-ego liability against Gary-Williams whatsoever. *See* Report at 10. Further, defense costs spent on asserting the defense of worker's compensation exclusivity on behalf of the actual employer, Wynnewood, would be allocable to the CGL Policy only from September 30, 2013 through November 6, 2014, and allocable to the WC/EL Policy only from November 7, 2014 through September 13, 2015.

CVR Energy has no evidence of allocation and cannot carry its burden to show evidence "affording the jury a reasonable basis on which to allocate the damage." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d at 170. "If the insured falls short of meeting this burden, the insurer is entitled to summary judgment." *Id.* Here, there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law.

**F.**   ***As the EL and CGL coverages do not overlap, CVR is unable to carry its burden to prove defense costs expended under the WC/EL Policy are the same as the defense costs spent under the CGL Policy (SIR endorsement), as a matter of law.***

Moreover, and more significantly here, to the degree the Report is adopted in relation to crediting the $500,000 deductible payments toward the $1,000,000 self-insured retention,[9] CVR Energy cannot carry its burden to allocate such credit as a matter of law. By CVR Energy's own admission, the $500,000 deductible was paid for workers' compensation benefits, not defense costs:

> By the time the Mann-Smith Plaintiffs initiated litigation in September 2013, CVR Energy had already satisfied the $500,000 deductible under the WC/EL Policy by reimbursing Zurich for worker's compensation benefits paid shortly after the incident on CVR Energy's behalf.

---

[9] *See* Report [Doc. 27] at 14–17.

*See* Complaint [Doc. 1] at ¶ 32. CVR cannot show any of its $500,000 deductible was paid under the WC/EL Policy for defense costs incurred in the underlying litigation, no more than it can show premiums spent on the WC/EL Policy should be allocated toward defense costs as opposed to workers' compensation benefits.[10]  The deductible payment was triggered solely as a result of workers' compensation benefits being paid under Part One of the WC/EL Policy, not defense costs paid under the separate and distinct coverages of Part Two. *See* Exh. B, WC/EL Policy at 18–19 (Workers Compensation and Employers Liability Insurance Policy, Part One and Part Two). Under the circumstances here, allocation of the deductible toward the SIR is impossible as a matter of law and summary judgment for Defendants is appropriate.

**G.**  ***The Fifth Circuit does not recognize recovery of covered legal expenses "inextricably intertwined" with uncovered legal expenses. Even if it did, here the defense payments under the WC/EL Policy and under the CGL Policy SIR are separate and independent and CVR Energy cannot allocate as a matter of law.***

CVR Energy may assert that defense costs under each policy are intermingled or "inextricably intertwined" with uncovered defense costs. To the contrary, Fifth Circuit law does not recognize the recoverability of uncovered legal expenses which happen to be "inextricably intertwined" with covered defense costs, meaning any such costs which purportedly overlap policies do not fall within coverage. Further, to the degree such legal expenses are covered under both policies, policy terms limit coverage to each policy's share of such defense costs. Thus, AZIC's payment obligation under the WC/EL Policy and the scope of defenses costs included under ZAIC's CGL Policy (and the SIR) are

---

[10] The reference to premiums under the WC/EL Policy being allocated toward defense costs is merely illustrative. Defendants adamantly deny that such premiums could ever be credited toward the SIR under the WC/EL Policy, and Defendants maintain that the deductible under the WC/EL Policy should similarly not be so credited.

separate and independent. As a matter of law CVR Energy cannot recover such costs at all, and alternatively, is unable to allocate any WC/EL Policy defense payments toward the CGL Policy SIR.

### 1. *"Inextricably intertwined" defense costs not recoverable.*

To the degree CVR Energy claims any defense costs fell under both the WC/EL and CGL Policies, the Fifth Circuit recently rejected the "inextricably intertwined" claim in respect to defense costs. *See Aldous v. Darwin Nat'l Assurance Co.*, 851 F.3d 473, 483 (5th Cir. 2017), *separate holding vacated on reh'g*, 889 F.3d 798, 800 (5th Cir. 2018). In *Aldous*, the court rejected the theory that claims for affirmative relief—even when inextricably intertwined with covered defense costs—should be recoverable:

> [T]hough the Policy covers only expenses related to the defense against Hill's claims, Aldous seeks to recover fees related to the affirmative prosecution of her affirmative claims insofar as it can be said the work was 'inextricably intertwined' with the defense. The problem with this argument is that there is absolutely no support for it.

*Id.* Here, too, defense costs for entities not covered by the WC/EL Policy—even if inextricably intertwined with defense costs for entities covered by that policy—are not recoverable under the WC/EL Policy. So, too, defense costs for entities not covered under the CGL Policy—even if inextricably intertwined with the defense for covered entities—are not recoverable under that policy.

### 2. *Alternatively, CVR Energy cannot carry its burden to allocate given the separate and independent obligations of AZIC and ZAIC under their "other insurance" provisions.*

In the alternative, even if "inextricably intertwined" defense costs could be recoverable, the policies provide for separate and independent defense obligations when "other insurance" applies. Thus, CVR Energy cannot carry its burden of allocation as a matter of law.

The WC/EL Policy includes the following "other insurance" provision which extends to defense costs:

F. Other Insurance

We will not pay more than our share of damages **and costs** covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

*See* Exh. B, WC/EL Policy at 21 (Workers Compensation and Employers Liability Insurance Policy, Part Two, F.) (emphasis added). The CGL Policy SIR endorsement similarly restricts coverage in respect to amounts falling within the self-insured retention:

J. Representations

By acceptance of this policy you agree that you will not procure insurance for all or any part of the Self Insured Retention Amounts shown in the SCHEDULE --- - SELF INSURED RETENTION AMOUNTS of this endorsement. If such insurance is procured, there will be no coverage under this policy as respects those Self Insured Retention Amounts.

*See* Exh. A, CGL Policy at 40 (Self Insured Retention, Form U-GL-1449-A CW (04/ 10), at I.J.)).

"Other insurance" provisions are enforceable, except where they conflict. *See Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.,* 444 S.W.2d 583, 590 (Tex. 1969). Here, the provisions are reconcilable. To the extent this Court finds there are any defense costs which would fall under both the WC/EL Policy and the CGL Policy (which Defendants deny is possible), the WC/EL Policy would limit the defense obligation to an equal share when any self-insurance applies. In turn, the CGL Policy SIR endorsement would limit coverage to amounts not paid through other insurance such as the WC/EL Policy, i.e., the remaining half of any "inextricably intertwined" defense costs. Thus,

defense costs under both policies are pro rata, limited to half of any potentially shared expense.

These obligations do not overlap but are independent obligations of ZAIC and AZIC under their independent policies. *See Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 772–73 (Tex. 2007). The Fifth Circuit refused to extend *Mid-Continent v. Liberty Mutual* to defense costs in *Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 694–95 (5th Cir. 2010). However, in *Trinity*, the "other insurance" provision was limited to indemnity and did not include defense costs:

> The language of the EMC Policy confirms this duty. By its express terms, the "other insurance" provision speaks only to an insured's "loss." It provides that, if there are co-primary insurance policies, EMC will share the cost of paying for any loss that Lacy Masonry suffers. It does not indicate a similar proration of costs incurred in fulfilling its separate and distinct duty to defend Lacy Masonry. The "other insurance" clause applies only to the duty to indemnify, not the duty to defend.

*Id.* In contrast here, the "other insurance" provisions expressly extend to defense costs. In the WC/EL Policy, the provision includes both "damages and costs," and in the CGL Policy's SIR endorsement, the provision extends to "all or any part of the Self Insured Retention Amounts." The defense costs here are independent and do not overlap, to the degree CVR Energy shows defense costs are "inextricably intertwined." Thus, to the degree CVR Energy attempts to avoid its burden of allocation by lumping such defense costs together, payments by the WC/EL Policy cannot be allocated to the CGL Policy SIR as a matter of law. Summary judgment is appropriate.

## H. *CVR Energy's remaining damages claims fail as a matter of law in respect to the duty to defend.*

CVR Energy's remaining claims for recovery fail as a matter of law to the degree they are based on the duty to defend. As noted above, Defendants are entitled to summary judgment on all claims by CVR Energy that additional amounts should be paid by

Defendants in respect to the duty to defend.[11] Additionally, CVR Energy has no evidence that it has satisfied its $1,000,000 SIR, has no evidence of amounts that have not been paid under the applicable policies, and has no evidence of damages in respect to the duty to defend.

Plaintiff's claims for breach of contract, violations of Chapter 541 of the Texas Insurance Code, and violations of the common-law duty of good faith and fair dealing all require a showing of damages to be actionable. *See Page v. JP Morgan Chase Bank, N.A.*, 605 Fed. Appx. 272, 275 (5th Cir. 2015) (breach of contract); *Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, 84 F. Supp. 3d 553, 569–70 (S.D. Tex. 2015) (breach of insurance contract); *LJC Fin., LLC v. Alliant Nat. Title Ins. Co.*, No. CIV.A. H-14-648, 2014 WL 7190872, at *6 (S.D. Tex. Dec. 16, 2014) (J. Rosenthal) ("Actual damages are required to support claims for breach of contract, breach of the duty of good faith and fair dealing, and violation of § 54[1].060 of the Texas Insurance Code."); *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490, 499–500 (Tex. 2018) (holding a claim under Chapter 541 requires the insured show damages based on either insurance benefits owed or "independent injury"); *Texas Farmers Ins. Co. v. Soriano*, 844 S.W.2d 808, 816 (Tex. App.—San Antonio 1992), *rev'd on other grounds*, 881 S.W.2d 312 (Tex. 1994) (recognizing that "every claimant is required to establish some damage in any cause of action" in the context of the duty of good faith and fair dealing); *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 215 (Tex. 1988) (recognizing damage as a required element of a

---

[11] In fact, the full $1,000,000 self-insured retention has not been paid to ZAIC. The remaining amount was paid by ZAIC in settlement of some of the underlying claims and thus relate to the duty to indemnify, not the duty to defend. Nevertheless, ZAIC and the other Defendants reserve all rights in respect to their own damages, pending this Court's ruling.

claim for breach of the duty of good faith and fair dealing), *overruled on other grounds*, *Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012).

In respect to the duty to defend, Plaintiff cannot show any evidence of defense costs allocable to, and payable under, AZIC's WC/EL Policy, ZAIC's CGL Policy, or AGLIC's Umbrella Policy. Further, Plaintiff cannot show "independent injury" in respect to the handling of defense costs. *See USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d at 490, 499–500. Thus, Plaintiff's claims for breach of contract, violations of Chapter 541 of the Texas Insurance Code, and violations of the common-law duty of good faith and fair dealing fail as a matter of law as to each Defendant on those claims related to the duty to defend.

Further, Plaintiff's claims under the Prompt Payment Act are based on allegations of failure to pay or late payment of defense costs. *See* Complaint [Doc. 1] at ¶¶ 78–81. As Defendant has no evidence to show defense costs are allocable to any specific policy, or that late payments were owed under any specific policy, Plaintiff has no evidence of statutory violations. Summary judgment on these claims is warranted.

## I.    *CVR Energy's claims in respect to the duty to indemnify are premature until such time as all underlying claims are resolved.*

Still pending are claims for relief in respect to the duty to indemnify. Some of the underlying claims have been settled, but others have not. Once the remaining underlying claims settle or proceed to judgment, Defendants reserve the right to request further relief from this Court.

#### IV.     SUMMARY JUDGMENT EVIDENCE

Exhibit A     Zurich American Insurance Company CGL Policy No. GLO 926657-02

Exhibit B     American Zurich Insurance Company WC/EL Policy No. 9267659-02

Exhibit C     American Guarantee and Liability Insurance Company UMB Policy No. 9267786-02

Exhibit D     Plaintiffs' Original Petition

Exhibit E     Plaintiffs' First Amended Petition

Exhibit F     Plaintiffs' Second Amended Petition

Exhibit G     Plaintiffs' Third Amended Petition

Exhibit H     Plaintiffs' First Supplemental Original Petition

Exhibit I     Plaintiffs' Fourth Amended Petition

Exhibit J     Plaintiffs' Fifth Amended Petition

#### V.     PRAYER

Defendants request summary judgment as noted above, and such further relief as they may be entitled.

Respectfully submitted,

_/s/ Blair Dancy_

Blair Dancy-Attorney in Charge
State Bar No. 24001235
Southern District ID No. 619381
bdancy@cstrial.com
Zachary H. Bowman
State Bar No. 24073944
Southern District ID No. 1312136
zbowman@cstrial.com
**CAIN & SKARNULIS PLLC**
400 W. 15th Street, Suite 900
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile
**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing has been forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure on this 10th day of August 2018, as follows:

| Method of Service | Party(ies) | Counsel |
|---|---|---|
| ***Electronic service*** | Plaintiff | Kristi L. Hamilton<br>**MEYER ORLANDO LLC**<br>khamilton@meyerorlando.com<br>13201 Northwest Freeway, Ste. 119<br>Houston, Texas 77040<br><br>Scott C. Hecht<br>Christina D. Arnone<br>**STINSON LEONARD STREET**<br>1201 Walnut, Suite 2900<br>Kansas City, Missouri 64105 |

*/s/ Blair Dancy*
Blair Dancy